U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 2 0 2009

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Criminal Complaint |
| v. | § | No. 4:09-MJ-292 |
| | § | |
| ISIDRO LOZANO | § | **FILED UNDER SEAL** |

## INTRODUCTION

I, Dallas Seals, the undersigned Complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

That I have been a Fort Worth Police Officer for 16 years and have been assigned as a Deputized Task Force Officer of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). This affidavit is based on my experience and my personal knowledge of the below described case, as well as interviews with and information received from Special Agents and other Task Force Officers assigned to the Task Force. Based on the investigation and the facts known to me, I believe:

That there is probable cause to believe that from on or about September 1, 2008 to on or about October 19, 2009, within the Northern District of Texas, and elsewhere, defendant **ISIDRO LOZANO** did knowingly and willfully combine, conspire, confederate and agree together and with others known and unknown to commit offenses against the United States, including violations of 18 U.S.C. §554(a) and 22 U.S.C. § 2778, that is, to fraudulently and knowingly export and send from the United States, and attempt to export and send from the United States any merchandise, object and article contrary to law and regulation of the United States, that is, firearms and ammunition; and to receive, conceal, buy, sell, and in any other manner facilitate the transportation, concealment, and sale of said firearms and ammunition, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation, of the United States, and in furtherance of and as part of the commission of these offenses, committed the acts as stated herein.

In violation of 18 U.S.C. § 371, (18 U.S.C. § 554(a) and 22 U.S.C. § 2778).

## RELEVANT STATUTES AND REGULATIONS

Title 18, United States Code, Section 554, makes it a crime to fraudulently or knowingly export firearms from the United States to Mexico. (a) In General. - Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of

Complaint – Page 1

such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

1. The Arms Export Control Act (AECA), as amended, and codified at 22 U.S.C. §§2751 to 2799aa-2, authorizes the President to control the export and import of commodities, services and technologies designated as "defense articles" and "defense services." The articles and services (and associated technical data) so designated constitute the U.S. Munitions List (USML), which is published at 22 C.F.R. § 121. The Act provides that individuals or entities seeking to export articles or services listed in the USML must first register with and obtain an export license from the U.S. Department of State Directorate of Defense Trade Controls (DOS). The President has delegated to DOS the authority to designate defense articles and defense services, and to issue regulations governing the licensing and export of designated materials. The AECA also provides criminal penalties for violations of these licensing requirements. Specifically, 22 U.S.C. § 2778 provides in pertinent part:

>    (b)(2)  Engaging in prohibited conduct:
> 
>    No defense articles or defense services designated by the President under subsection (a)(1) of this section may be exported or imported without a license for such export or import, issued in accordance with this chapter and regulations issued under this chapter, except that no license shall be required for exports or imports made by or for an agency of the United States Government (A) for official use by a department or agency of the United States Government, or (B) for carrying out any foreign assistance or sales program authorized by law and subject to the control of the President by other means.
> 
>    (c)  Any person who willfully violates any provision of this section . . . of this title, or any rule or regulation issued under either section, or who willfully, in a registration or license application or required report, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined for each violation not more than $1,000,000 or imprisoned for more than 10 years, or both.

## COMPLAINT

1. On October 15, 2009, agents and Task Force Officers of the Bureau of Alcohol, Tobacco, and Firearms, Fort Worth Field Office received information from a confidential informant that on October 16, 2009, Javier ROSALES would be receiving a load of firearms consisting of six (6) Colt AR-15 rifles, a Colt .38 Super caliber pistol, twenty five AR-15 magazines, and two

**Complaint – Page 2**

hundred (200) pistol magazines at the Extra Space commercial storage facility at 5401 West Rosedale Street, Fort Worth, Texas. By utilizing a court ordered TIII phone intercept, Investigators learned that Javier ROSALES would be transferring the firearms to unknown Hispanic males in Arlington, Texas, to be smuggled to Mexico.

2. On October 16, 2009, Bureau of Alcohol, Tobacco and Firearms, Task Force Officer Dallas Seals received a search warrant authorizing the electronic tracking of the box containing one hundred of the Colt .38 Super pistol magazines. Investigators established physical and electronic surveillance on Javier ROSALES in the morning of October 16, 2009. At approximately 11:30 a.m., Javier ROSALES arrived at the Extra Storage facility at 5401 West Rosedale, Fort Worth, Texas, at which time he received the six Colt AR-15 rifles, the Colt .38 Super pistol, and the two hundred pistol magazines, including the box containing the electronic tracking device.

3. Investigators followed Javier ROSALES from the storage facility. Investigators continued to monitor Javier ROSALES' telephone conversations as they followed Javier ROSALES to 609 Jackson Square, Arlington Texas. On October 16, 2009, ROSALES spoke to three different unidentified Hispanic males on the telephone in regards to delivering the firearms. During a conversation at 9:52 a.m., an unidentified Hispanic male identified himself as "CHINO." After exiting I-30 onto Cooper Street in Arlington, Javier ROSALES telephoned "CHINO" and "CHINO" directed Javier ROSALES to 609 Jackson Square. Javier ROSALES was met by a Hispanic male approximately twenty to twenty five years old, wearing a black T-shirt with LOZANO embossed on the back in white letters. This unknown male, later identified as **Isidro LOZANO**, and Javier ROSALES removed the firearms and magazines, to include the box containing the tracking device, from Javier ROSALES' truck and carried them into Apartment number 227. After the firearms and magazines were unloaded Javier ROSALES left in his vehicle and **LOZANO** returned to Apartment 227.

4. After leaving 609 Jackson Square, Javier ROSALES telephoned Alberto "BETICO" PULIDO in Mexico and told him that "it" was done. Alberto PULIDO confirmed that Javier ROSALES delivered the AR-15's, the pistol, and the magazines. Javier ROSALES confirmed the delivery.

5. Investigators maintained around the clock physical surveillance on 609 Jackson Square, Apartment number 227 and monitored the authorized electronic tracking device inside the box of pistol magazines which indicated that the box of pistol magazines remained at 609 Jackson Square, Apartment Number 227.

6. At approximately 10:45 p.m. on Saturday, October 17, 2009, TFO Addy observed **Isidro LOZANO** exit 609 Jackson Square, Apartment Number 227. TFO Addy recognized that **Isidro LOZANO** was carrying three of the boxes that had originally contained the Colt AR-15 Rifles that Javier ROSALES had delivered the day before. TFO Addy observed from the way that **Isidro LOZANO** carried the Colt AR-15 boxes that the boxes appeared to contain the firearms. TFO Addy moved to a surveillance position which allowed observation of **Isidro LOZANO'S** 1999 GMC Yukon, Texas License TLM053. TFO Addy observed **Isidro LOZANO** as he

**Complaint – Page 3**

placed the six Colt Ar-15 boxes, the two boxes of pistol magazines, and the Colt .38 Super caliber pistol into the GMC Yukon.

7. Once the firearms and other items were loaded into the vehicle, **Isidro LOZANO** and his wife Ilse GARCIA loaded two of their young children into the vehicle and left the residence. As the vehicle turned southbound onto Collins Street from Pioneer Parkway, the driver failed to signal the right turn. At that time patrol officers from Arlington Police Department initiated a traffic stop on the vehicle. During the traffic stop, **Isidro LOZANO** was arrested for an outstanding traffic warrant. Officer T. Martinez requested consent to search the vehicle from Ilse GARCIA. Ilse GARCIA signed the provided consent form allowing officers to search the vehicle. During the search the officers found the aforementioned firearms and components in the rear cargo area of the Yukon where TFO Addy had observed **Isidro LOZANO** place them. **Isidro LOZANO** was asked if the firearms were his and **Isidro LOZANO** replied, "I don't know whose they are, or where they came from." In addition to the firearms and components seized from the vehicle Investigators found that **Isidro LOZANO** possessed a phone bearing the same number that Javier ROSALES had been recorded making arrangements to deliver the firearms to 609 Jackson Square, Apartment 227.

8. **Isidro LOZANO** engaged in the criminal operation JAVIER ROSALES was directing to facilitate the illegal exportation of firearms to Mexico for ALBERTO PULIDO. **Isidro LOZANO** clearly participated and engaged in this criminal activity by taking delivery of firearms from JAVIER ROSALES, storing the firearms at his residence, and attempting to transport the firearms to be transferred to unknown persons who would smuggle the firearms out of the United States to Mexico.

## CONCLUSION

Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that **ISIDRO LOZANO** engaged in a conspiracy with persons known and unknown to unlawfully export, and attempt to unlawfully export, firearms from the United States to Mexico in violation of 18 U.S.C. §§ 371 and 554(a) and 22 U.S.C. § 2778. I respectfully request that warrants be issued authorizing arrest on these charges for those identified individuals.

Dallas Seals, Task Force Officer
Bureau of Alcohol Tobacco and Firearms

Subscribed and sworn before me this _20_ of October 2009.

CHARLES BLEIL
United States Magistrate Judge

**Complaint – Page 4**