```
 1              IN THE UNITED ST`ATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
 2                    FORT WORTH DIVISION

 3

 4   UNITED STATES OF AMERICA        ( 4:09-CR-160-A
                                     (
 5   VERSUS                          ( DALLAS, TEXAS
                                     (
 6   ISIDRO LOZANO                   ( NOVEMBER 25, 2009

 7

 8                TRANSCRIPT OF ARRAIGNMENT
            BEFORE THE HONORABLE CHARLES BLIEL
 9            UNITED STATES MAGISTRATE JUDGE

10

11

12   A P P E A R A N C E S:

13

     FOR THE GOVERNMENT:        JOSHUA T. BURGESS
14                              Assistant United States Attorney
                                801 Cherry Street
15                              Burnett Plaza Suite 1700 Unit 4
                                Fort Worth, Texas 76102
16                                817.252.5200

17

18   FOR THE DEFENDANT:         MARK R. DANIELSON
                                Law Office of Mark R. Danielson
19                              601 Strada Circle, Suite 106
                                Mansfield, Texas  76063
20                                817.845.3790

21

22   INTERPRETER:              MICHAEL MAHLER

23

     COURT REPORTER:           RANDY M. WILSON, C.S.R.
24                             1100 Commerce Street, Room 1625
                               Dallas, Texas 75242
25                                214.766.9150
```

```
1              (Proceedings begin at 9:10 a.m.)
2          THE COURT:  Thank you.  Please be seated.
3      We have a number of cases set for arraignment this
4  morning.  I'm going to call the cases and we're going to try
5  to do eight arraignments in one session.  So I would ask the
6  defendants as they're called to please come forward and line
7  up in order in front of the counsel tables and accompanied by
8  their attorneys.
9      That's in the cases of the United States of America
10 versus Thomas James Murphy --
11     Ma'am, if the baby is going to make sounds, this really
12 is not the place for a child of that age.
13     Okay.  Excuse me.
14     Juan Ramirez, Javier Rosales, Jesus Ortega, Daniel
15 Bernardino, Gustavo Pulido, Isidro Lozano, and Eduardo
16 Flores.
17          MR. BURGESS:  Your Honor, may I approach briefly?
18                        (Pause.)
19          THE COURT:  I will say that in connection with the
20 cases involving Mr. Ramirez, Rosales, Ortega, Bernardino,
21 Pulido, and Lozano it is necessary that we have the
22 assistance of a Spanish speaking interpreter.  And
23 Mr. Michael Mahler is present and has been sworn as court
24 interpreter.
25          (Michael Mahler, Interpreter, perviously sworn.)
```

1          THE COURT:  I now want to ask each of you to please

2     raise your right hand to be sworn by the clerk.

3               (All eight defendants are sworn.)

4          THE COURT:  Thank you.

5       I will say that in connection with the Defendant Pulido,

6     Mr. Durden had been appointed and now Charles Roach has been

7     retained and entered his appearance.

8          And so, Mr. Durden, you will be relieved of any further

9     responsibility.  And we will note that on the minute order,

10    so the necessity of a motion and form of order will not be

11    required.

12          MR. DURDEN:  Very good.  Thank you, Your Honor.

13    And with the court's permission may I be excused?

14          THE COURT:  Yes, you may.  Have you a good

15    Thanksgiving.

16          MR. DURDEN:  Thank you, Your Honor.

17          THE COURT:  Very well.  Let me start with

18    Mr. Murphy.

19       Will you state your full name for the record.

20          DEFENDANT MURPHY:  Thomas James Murphy.

21          THE COURT:  How old are you?

22          DEFENDANT MURPHY:  26.

23          THE COURT:  How far did you go in school?

24          DEFENDANT MURPHY:  Two years of college.

25          THE COURT:  Thank you.

1          Mr. Ramirez, would you state your full name.

2               DEFENDANT RAMIREZ:  Juan Manuel Ramirez.

3               THE COURT:  And how old are you?

4               DEFENDANT RAMIREZ:  40.

5               THE COURT:  How far did you go in school?

6               DEFENDANT RAMIREZ:  Second year of secondary

7     school.

8               THE COURT:  Thank you.

9          Mr. Rosales, would you state your full name for the

10    record.

11              DEFENDANT ROSALES:  Javier Rosales.

12              THE COURT:  How old are you?

13              DEFENDANT ROSALES:  23.

14              THE COURT:  How far did you go in school?

15              DEFENDANT ROSALES:  I graduated high school.

16              THE COURT:  Thank you.

17         Mr. Ortega, would you please state your full name for

18    the record.

19              DEFENDANT ORTEGA:  Jesus Ortega.

20              THE COURT:  And how old are you?

21              DEFENDANT ORTEGA:  28.

22              THE COURT:  And how far did you go in school?

23              DEFENDANT ORTEGA:  Tenth year of high school.

24              THE COURT:  And, Mr. Bernardino, at this time would

25    you state your full name.

```
1              DEFENDANT BERNARDINO:  Daniel Bernardino.
2              THE COURT:  And how old are you?
3              DEFENDANT BERNARDINO:  50.
4              THE COURT:  And how far did you go in school?
5              DEFENDANT BERNARDINO:  Sixth year of primary
6     school.
7              THE COURT:  Thank you.
8         Mr. Pulido, would you state your full name for the
9     record.
10             DEFENDANT PULIDO:  Gustavo Pulido.
11             THE COURT:  How old are you?
12             DEFENDANT PULIDO:  48.
13             THE COURT:  And how far did you go in school?
14             DEFENDANT PULIDO:  Fourth year.
15             THE COURT:  Thank you.
16        And, Mr. Lozano, would you state your full name for the
17    record.
18             DEFENDANT LOZANO:  Isidro Lozano.
19             THE COURT:  And how old are you?
20             DEFENDANT LOZANO:  29.
21             THE COURT:  How far did you go in school?
22             DEFENDANT LOZANO:  Second year of college.
23             THE COURT:  Thank you.
24        Mr. Flores, would you state your full name for the
25    record.
```

1              DEFENDANT FLORES:  Eduardo Flores.

2              THE COURT:  Mr. Flores, is it uncomfortable for

3    you --

4              DEFENDANT FLORES:  No, sir.

5              THE COURT:  -- to stand?

6              DEFENDANT FLORES:  I'm all right.  Thank you very

7    much.

8              THE COURT:  Thank you.

9         I want to ask each of you:  Are you now or have you

10   recently been under the care of a physician or a

11   psychiatrist?

12        Mr. Murphy?

13             DEFENDANT MURPHY:  No, sir.

14             THE COURT:  Mr. Ramirez?

15             DEFENDANT RAMIREZ:  No.

16             THE COURT:  Mr. Rosales?

17             DEFENDANT ROSALES:  No.

18             THE COURT:  Mr. Ortega?

19             DEFENDANT ORTEGA:  No.

20             THE COURT:  Mr. Bernardino?

21             DEFENDANT BERNARDINO:  No.

22             THE COURT:  Mr. Pulido?

23             DEFENDANT PULIDO:  No.

24             THE COURT:  Mr. Lozano?

25             DEFENDANT LOZANO:  No.

```
 1              THE COURT:  Mr. Flores?
 2              DEFENDANT FLORES:  No, sir.
 3              THE COURT:  Have you been hospitalized or treated
 4     for narcotics addiction or alcoholism?
 5         Mr. Murphy?
 6              DEFENDANT MURPHY:  No.
 7              THE COURT:  Mr. Ramirez?
 8              DEFENDANT RAMIREZ:  No.
 9              THE COURT:  Mr. Rosales?
10              DEFENDANT ROSALES:  No.
11              THE COURT:  Mr. Ortega?
12              DEFENDANT ORTEGA:  No.
13              THE COURT:  Mr. Bernardino?
14              DEFENDANT BERNARDINO:  No.
15              THE COURT:  Mr. Pulido?
16              DEFENDANT PULIDO:  No.
17              THE COURT:  Mr. Lozano?
18              DEFENDANT LOZANO:  No.
19              THE COURT:  Mr. Flores?
20              DEFENDANT FLORES:  No, sir.
21              THE COURT:  Are you now under the influence of
22     alcohol or any drugs?
23         Mr. Murphy?
24              DEFENDANT MURPHY:  No.
25              THE COURT:  Mr. Ramirez?
```

```
 1                    DEFENDANT RAMIREZ:  No.
 2                    THE COURT:  Mr. Rosales?
 3                    DEFENDANT ROSALES:  No.
 4                    THE COURT:  Mr. Ortega?
 5                    DEFENDANT ORTEGA:  No.
 6                    THE COURT:  Mr. Bernardino?
 7                    DEFENDANT BERNARDINO:  No.
 8                    THE COURT:  Mr. Pulido?
 9                    DEFENDANT PULIDO:  No.
10                    THE COURT:  Mr. Lozano?
11                    DEFENDANT LOZANO:  No.
12                    THE COURT:  And, Mr. Flores?
13                    DEFENDANT FLORES:  No, sir.
14                    THE COURT:  Do you feel physically and mentally fit
15     and able to proceed this morning with this arraignment
16     hearing?
17        Mr. Murphy?
18                    DEFENDANT MURPHY:  Yes.
19                    THE COURT:  Mr. Ramirez?
20                    DEFENDANT RAMIREZ:  Yes.
21                    THE COURT:  Mr. Rosales?
22                    DEFENDANT ROSALES:  Yes.
23                    THE COURT:  Mr. Ortega?
24                    DEFENDANT ORTEGA:  Yes.
25                    THE COURT:  Mr. Bernardino?
```

```
1              DEFENDANT BERNARDINO:  Yes.

2              THE COURT:  Mr. Pulido?

3              DEFENDANT PULIDO:  Yes.

4              THE COURT:  Mr. Lozano?

5              DEFENDANT LOZANO:  Yes.

6              THE COURT:  And, Mr. Flores?

7              DEFENDANT FLORES:  Yes, sir.

8              THE COURT:  Each of you is here with your attorney.

9     I presume that you have talked about this case with your

10    attorney, the charges against you as set out in the

11    indictment that has been returned by the grand jury.

12         Is it true, have you discussed this case and the charges

13    with your attorney?

14         Mr. Murphy?

15             DEFENDANT MURPHY:  Yes.

16             THE COURT:  Mr. Ramirez?

17             DEFENDANT RAMIREZ:  Yes.

18             THE COURT:  Mr. Rosales?

19             DEFENDANT ROSALES:  Yes.

20             THE COURT:  Mr. Ortega?

21             DEFENDANT ORTEGA:  Yes.

22             THE COURT:  Mr. Bernardino?

23             DEFENDANT BERNARDINO:  Yes.

24             THE COURT:  Mr. Pulido?

25             DEFENDANT PULIDO:  Yes.
```

1          THE COURT:  Mr. Lozano?

2          DEFENDANT LOZANO:  Yes.

3          THE COURT:  And, Mr. Flores?

4          DEFENDANT FLORES:  Yes, sir.

5          THE COURT:  Do you understand the nature of the

6    charges against you as set out in the indictment?

7        Mr. Murphy?

8          DEFENDANT MURPHY:  Yes.

9          THE COURT:  Mr. Ramirez?

10         DEFENDANT RAMIREZ:  Yes.

11         THE COURT:  Mr. Rosales?

12         DEFENDANT ROSALES:  Yes.

13         THE COURT:  Mr. Ortega?

14         DEFENDANT ORTEGA:  Yes.

15         THE COURT:  Mr. Bernardino?

16         DEFENDANT BERNARDINO:  Yes.

17         THE COURT:  Mr. Pulido?

18         DEFENDANT PULIDO:  Yes.

19         THE COURT:  Mr. Lozano?

20         DEFENDANT LOZANO:  Yes.

21         THE COURT:  And, Mr. Flores?

22         DEFENDANT FLORES:  Yes, sir.

23         THE COURT:  Because you have talked about the

24   charges with your lawyer and you tell me that you understand

25   the nature of the charges against you, I will allow you to

1   waive the reading of the indictment at this time in open

2   court.   That is absolutely your choice.

3        Do you wish to have the indictment read now or do you

4   wish to waive the reading of the indictment?

5        Mr. Murphy?

6             DEFENDANT MURPHY:   Waive.

7             THE COURT:   Very well.

8        Mr. Ramirez?

9             DEFENDANT RAMIREZ:   I waive.

10            THE COURT:   Mr. Rosales?

11            DEFENDANT ROSALES:   Waive.

12            THE COURT:   Mr. Ortega?

13            MR. BUSH:   Your Honor, we're not going to waive the

14  reading.   We want the indictment read.

15            THE COURT:   Very well.

16       At this time I will call upon the United States Attorney

17  to -- just a minute.

18       Let me go back to the other three defendants to see if

19  it will be read for more than one.

20       Mr. Bernardino, would you like to have the indictment

21  read or to waive the reading?

22            DEFENDANT BERNARDINO:   I waive.

23            THE COURT:   Mr. Pulido?

24            DEFENDANT PULIDO:   I waive.

25            THE COURT:   Mr. Lozano?

1          DEFENDANT LOZANO:  I waive.

2          THE COURT:  And, Mr. Flores?

3          DEFENDANT FLORES:  I'd like to waive.

4          THE COURT:  I will allow each of you to waive the

5    reading of the indictments.

6        And I will call upon Mr. Josh Burgess, the U.S.

7    attorney, to go over the indictment against this client,

8    Mr. Ortega, or the Defendant Ortega.

9        Thank you Mr. Burgess.

10          MR. BURGESS:  Indictment.

11        Grand Jury charges:

12        Introduction.

13        At all times material to this indictment the la Familia

14    drug trafficking organization, D.T.O., is a Mexican cartel

15    responsible for the exportation of narcotics to the United

16    States.  The Gulf cartel is a rival of D.T.O. that utilizes

17    the paramilitary resources of an organization known as the

18    Zetas.

19          THE COURT:  Mr. Burgess, you might remember that

20    there's an interpreter.

21          MR. BURGESS:  Yes, sir.

22          THE COURT:  Thank you.

23          THE INTERPRETER:  Your Honor, if the interpreter

24    could possibly have a copy of the indictment?

25          THE COURT:  Thank you, Mr. Belcher.

1          MR. BELCHER:   No problem.

2          MR. BURGESS:   That is, the Zetas could control

3   narcotics supply routes through the use of violence.

4       The la Familia D.T.O. is in a state of conflict with the

5   Zetas.

6       Handguns and rifles are heavily restricted in Mexico.

7   Therefore, in order to arm themselves, the la Familia D.T.O.

8   through the direction of the Defendant Alberto Pulido a/k/a

9   Betico has sought to have firearms purchased in the United

10  States and smuggled to Mexico.  In order to fund the purchase

11  of firearms, narcotics were smuggled into the United States.

12      The Arms Export Control Act as amended and codified at

13  22 U.S.C. Sections 2751 the 2799(a)(A)(2) authorizes the

14  President to control the export of commodities, services, and

15  technologies designated as defense articles and defense

16  services in furtherance of the security and foreign policy

17  interests of the United States.  The articles and services so

18  designated constitute the U.S. Munitions List, which is

19  published at 22 C.F.R. Section 121.

20      The A.E.C.A. provides that individuals or entities

21  seeking to export articles or services listed in the U.S.M.L.

22  must first register with and obtain an export license from

23  the United States Department of State Directorate of Defense

24  Trade Controls.

25      The President has delegated to DOS the authority to

designate defense article and defense services and to issue
regulations governing the licenses of designated materials.

The DOS regulations implementing the provisions of
A.E.C.A. are entitled the International Trafficking in Arms
Regulations ITAR, Title 22 Code of Federal Regulations
Sections 120 to 130 subchapter M.

The ITAR identify by category the defense related
articles and services that are covered by the U.S.M.L. and
establish the requirements and procedures for registering
with and obtaining a license from DOS for the export of any
such materials.

Among other requirements, the ITAR requires an applicant
for an export license to identify the ultimate and final
designation of the goods or services.

Category 1 of the U.S.M.L. covers several
classifications of firearms including nonautomatic and
semi-automatic firearms up to .50 caliber.  22 C.F.R. Section
12.1 category 1(a).

The following weapons were covered by category 1 of the
U.S.M.L. and were defense articles that could not be exported
from the United States without a license issued by DOS:

Romanian Arms WASR-10 rifle;

Barrett 82A1, .50 caliber rifle;

PTR-91, Model KF -- excuse me, KMF4, .308 carbine rifle;

Colt, El Jefe, .38 Super Pistol;

1          Colt 5.56 AR-15 rifle;

2          Arma-Lite AR-10;

3          Smith & Wesson 19-2, .357 caliber handgun;

4          Smith & Wesson 19-4, .357 caliber handgun.

5          Federal firearms licensees (F.F.L.) are dealers of

6     firearms who sell firearms as part of their livelihood.

7     F.F.L.s are required by federal law to maintain records

8     related to the sale of firearms to consumers.  The principal

9     purpose of requiring licensed firearms dealers to obtain such

10    information from purchasers is to assist law enforcement

11    activities.  One of the records required to be kept by

12    F.F.L.s Bureau of Alcohol, Tobacco, Firearms, and Explosives

13    Form 4473.  Military Gun Supply is a gun store that is owned

14    by D.N.  Ammo Depot is a gun store that is owned by M.L.

15    D.N. and M.L. are both F.F.L.s.

16         Form 4473 requires a purchaser of a firearm to

17    truthfully answer whether or not the firearms being purchased

18    are being purchased on behalf of another person.  It is

19    illegal to state on Form 4473 that a person is the actual

20    buyer of the firearm if the firearm is purchased at the

21    request of or with the money from a third party.  The members

22    of the conspiracy would circumvent this requirement by

23    replying on Form 4473 stating that the guns were for

24    themselves when in fact they were being transferred to

25    others.

1    Count 1.

2    Conspiracy to smuggle goods of the United States.

3    The grand jury incorporates and realleges the

4    allegations set out in paragraphs 1 through 7 of the

5    introduction of the indictment.

6    From on or about June 14, 2006, until at least October

7    the 12th 2009, in the Fort Worth Division of the Northern

8    District of Texas and elsewhere, the Defendants Alberto

9    Pulido, also known as Betico, Juan Ramirez, Javier Rosales,

10    Jesus Ortega, Daniel Bernardino, Gustavo Pulido, Isidro

11    Lozano, and Eduardo Flores, did knowingly and willfully

12    combine, conspire, confederate, and agree together and with

13    each other and with others known and unknown to the grand

14    jury to commit offenses against the United States including

15    violations of 18 U.S.C. Section 554(a), that is, to

16    fraudulently and knowingly export and send from the United

17    States and attempt to export and send from the United States

18    any merchandise object, or article contrary to law and

19    regulation of the United States, that is, firearms; and to

20    receive conceal, buy, sell, and in any other manner

21    facilitate the transportation, concealment, and sale of the

22    said firearms and ammunition prior to the exportation knowing

23    that the same to be intended for exportation contrary to any

24    law or regulation of the United States.

25    Manner and means.

1      The manner and means by which the defendants sought to

2   accomplish the object of the conspiracy, included among

3   others the following:

4      Defendant Juan Ramirez would purchase firearms for the

5   purpose of exporting them to Alberto Pulido and the la

6   Familia D.T.O. in Mexico.  So as to avoid the suspicions to

7   himself, Juan Ramirez would recruit other individuals to

8   purchase firearms on his behalf.  Juan Ramirez would pay

9   these individuals for purchasing the guns and turning them

10  over to him.

11     After Juan Ramirez had a falling out with the la Familia

12  D.T.O., Defendant Javier Rosales assumed leadership

13  responsibilities from Juan Ramirez.  When Javier Rosales had

14  firearms ready to take to Mexico, he would drive his vehicle

15  a public location.  Once there, the vehicle would be driven

16  away by other unidentified members of the conspiracy.  The

17  guns would be driven to a random located in Cleburne, Texas.

18     The ranch in Cleburne, Texas, is five acre property

19  surrounded by a fence with an interior privacy fence.

20  Persons residing at the ranch conducted frequent patrols of

21  the property.  Once firearms were taken to the ranch, they

22  were unloaded to await shipment to Mexico.  After the

23  firearms were loaded, Javier Rosales' vehicle was returned to

24  him.

25     On at least one occasion, Defendants Daniel Bernardino,

Gustavo Pulido, and Isidro Lozano were utilized to transport weapons to the organization.  Defendant Eduardo Flores helped to coordinate the activities of Isidro Flores -- excuse me, Isidro Lozano.

Overt acts.

In furtherance of the conspiracy and to effect the objects thereof, in the Northern District of Texas, at least one of the conspirators committed and caused to be committed at least one of the following overt acts:

On or about August 29, 2008, Juan Ramirez purchased a Barrett .50 caliber rifle, serial number 22843, and five Romanian Arms WASR-10 rifles, serial numbers 19845AY4514, 464910650P1901, 1965LM1248, 1966TU2666, and 1975F00766 from the Ammo Depot in Caddo Mills, Texas.  Although these weapons were purchased for export to Mexico, Juan Ramirez stated on Form 4473 that he was the actual buyer of this weapon, when in fact he was not.

On or about September 20th, 2008, Juan Ramirez purchased 20 AK-47 type rifles from the Military Gun Supply in Fort Worth, Texas.  Although these weapons were purchased for export to Mexico, Juan Ramirez stated on the Form 4473 that he was the actual buyer of these weapons, when in fact he was not.

On or about November 11, 2008, Javier Rosales delivered multiple firearms to two Hispanic males in order to have the

firearms transported.

On or about December 19, 2008, Javier Rosales purchased a Colt, El Jefe .38 Super Pistol, serial number 38SS04054, for the purpose of giving it as a gift to a boss in the la Familia drug trafficking organization in Mexico.

On or about December 20th, 2008, Jesus Ortega, Daniel Bernardino, and others drove in three car caravan to the Mexican boarder.  Approximately 25 miles from the international border with Mexico, their vehicles were stopped by law enforcement.  A subsequent search of a 1999 Chevrolet van that was part of their caravan revealed the presence of 33 firearms and approximately 11,000 rounds of ammunition. The guns were concealed inside the lining of the walls and the ceiling of the van.  Among the guns seized was the .38 Super Pistol purchased on December 19, 2008, by Javier Rosales.

On or about June 22nd, 2009, Javier Rosales loaded multiple firearms into his vehicle and drove to the Home Depot at I-35 and Sycamore School Road in Fort Worth, Texas. Javier Rosales was meant by two Hispanic males.  Javier Rosales allowed one of the men to drive away in his vehicle. The vehicle was driven to 6209 Roberts Lane, Cleburne, Texas, where the guns were unloaded.  The vehicle was then returned to Javier Rosales at Home Depot.

On or about July 8, 2009, Javier Rosales delivered four

1    PTR-91 .308 caliber rifles to Gustavo Pulido.

2         On or about July 10th, Javier Rosales delivered four

3    additional PTR-91 .308 caliber rifles to Gustavo Pulido.

4         On or about October the 15th, 2009, Eduardo Flores

5    recruited Isidro Lozano to transport weapons to McAllen,

6    Texas.

7         On or about October the 16th, 2009, Isidro Lozano

8    received six Colt AR-15 rifles, a Colt .38 Super Pistol, 200

9    pistol magazines, and 25 AR-15 magazines from Javier Rosales.

10        All in violation of 18 U.S.C. Section 371, 18 U.S.C.

11   Section 524(a).

12        The defendant is also named in count 5 of the

13   indictment -- excuse me.   Count 3.

14        Yes, I'm sorry, Count 5.

15        Count 5.   The smuggling goods from the United States.

16        The grand jury incorporates and realleges the

17   allegations set out in paragraphs 1 through 7 of the

18   introduction to the indictment.

19        On or about December 20th, 2008, in the Northern

20   District of Texas, the defendants Jesus Ortega and Daniel

21   Bernardino, did fraudulently and knowingly receive, conceal,

22   buy, and facilitate the transportation, concealment, and sale

23   prior to export from the United States of merchandise,

24   articles, and objects, specifically, firearms and ammunition,

25   including but not limited to one Colt, El Jefe, .38 Super

Pistol, serial number 38SS04054, one Arma-Lite AR-10, serial

number US313179, one Smith & Wesson 19-2, .357 caliber

handgun, serial number K629979, one Smith & Wesson 19-4, .357

caliber handgun, serial number 184K6031, and one Romanian

Arms WASR-10, serial number 16438204 knowing these two be

intend for export without having first attained the required

export license and authorization from the U.S. Department of

State, in violation of, and contrary to, the Arms Export

Control Act, 22 U.S.C. Section 2778(b)(2) reason (c) and the

International Trafficking Arms Regulations 22 C.F.R. Section

121(3), 143(1), and 127(1).

          In violation of 18 U.S.C. Section 554(a).

          Forfeiture allegations.

          Upon conviction of any of the offenses in counts 1

through 5 of this indictment and pursuant to 19 U.S.C.

Section 1595(a)(2), and 28 U.S.C. 24161(c), the Defendants

Alberto Pulido, Juan Ramirez, Javier Rosales, Jesus Ortega,

Daniel Bernardino, and Gustavo Pulido, Isidro Lozano, and

Eduardo Flores, shall forfeit to the United States of America

the merchandise exported and sent from the United States or

attempted to be exported or sent from the United States in

violation of law, or the proceeds or value thereof, and the

property used to facilitate the exported or sending of such

merchandise, the attempting exporting or sending of such

merchandise, or the receipt, purchase, transportation,

concealment, or sale of such merchandise prior to exportation.

Upon conviction of any of the offenses alleged in Count 1 through 5 of the indictment, and pursuant to 18 U.S.C. 981(a)(1)(C), and 28 U.S.C. Section 2461(c) the Defendants Alberto Pulido, Juan Ramirez, Javier Rosales, Jesus Ortega, Daniel Bernardino, Gustavo Pulido, Isidro Lozano, and Eduardo Flores, shall forfeit to the United States of America any and all property constituting or derived from proceeds traceable to the respectable offenses.

The above-referenced property subject to forfeiture includes but is not limited to the following:

The real property at 6209 Roberts Lane, Cleburne, Johnson County, Texas, described as being 4.811 acres, more or less, tract of land out of the S. Kinsey Survey, Abstract Number 475, Johnson County, Texas, and more particularly described as the real property conveyed by Stephen J. Perry and Diana L. Perry to Ramon Godinez, or Gadinez (phonetic), by warranty deed with vendor's lien on July 20th, 2007, reported to the Johnson County Clerk on July 30, 2007.

2008 Nissan Titan, bearing license -- Texas license plate 82R-SY8.

2008 Dodge Ram, VIN 3D6WC66A08G148431 and bearing Oklahoma license plate 180-BXC.

2003 Ford F-550, VIN 1FDAF56P53EC75452 and bearing

1    Oklahoma license plate 073-BAZ.

2        2007 Chevrolet box truck, VIN GVHG31U871160895.

3        2007 Chevrolet box truck, VIN 1GVHG31V071181295.

4        Six Colt AR-15 rifles, serial numbers LE74662, LE7 --

5    LE073524, LE074412, LE073210, LE068877, and LE073371.

6        One Colt Mark IV Pistol, .38 caliber, serial number

7    38SS04015.

8        100 rounds of Lake City .50 caliber ammunition.

9        A true bill.

10            THE COURT:  Thank you, Mr. Burgess.

11            MR. BURGESS:  Thank you, Your Honor.

12            THE COURT:  At this time I will now ask each of the

13    defendants:  How do you plead to the charges against you as

14    set out in the indictment, guilty or not guilty?

15        Mr. Murphy?

16            DEFENDANT MURPHY:  Not guilty.

17            THE COURT:  Very well.

18        Mr. Murphy, because you have pled not guilty you're

19    entitled to a trial by a jury, which will be here in this

20    courtroom before Judge Means, January 25th, 2010, at 1:30

21    p.m.    A trial scheduling order will be issued shortly

22    setting out that trial date and other important dates leading

23    up to the trial.

24        And for the other defendants, Mr. Ramirez, Rosales,

25    Ortega, Bernardino, Pulido, Lozano, and Flores, your trial is

1  set for January 5th, 2010, at 8:30a.m.  It will be a jury

2  trial with Judge John McBryde presiding in his courtroom on

3  the Fourth Floor of this courthouse.

4      I will sign an order that affixes that date and time of

5  trial for all of these defendants.

6          MR. DANIELSON:  Your Honor, if I might interrupt

7  you.

8      You didn't take the pleas for the -- the other seven.

9      Because you had two different groups, I think.

10         MR. BUSH:  He's correct.

11         THE COURT:  He's always correct.

12                (Laughter.)

13         THE COURT:  Thank you very much.

14      All right.  How do you plead, guilty or not guilty?

15      Mr. Ramirez?

16         DEFENDANT RAMIREZ:  Not guilty.

17         THE COURT:  Mr. Rosales?

18         DEFENDANT ROSALES:  Not guilty.

19         THE COURT:  Mr. Ortega?

20         DEFENDANT ORTEGA:  Not guilty.

21         THE COURT:  Mr. Bernardino?

22         DEFENDANT BERNARDINO:  Not guilty.

23         THE COURT:  Mr. Pulido?

24         DEFENDANT PULIDO:  Not guilty.

25         THE COURT:  Mr. Lozano?

1          DEFENDANT LOZANO:  Not guilty.

2          THE COURT:  And, Mr. Flores?

3          DEFENDANT FLORES:  Not guilty, Your Honor.

4          THE COURT:  Thank you.

5     Because each of you has plead not guilty you're entitled

6     to a trial by a jury.  And that is set for January 5th, 2010,

7     at 8:30 a.m. before Judge John McBryde on the Fourth Floor of

8     this courthouse.

9          And I will enter an order that affixes the date and time

10    of that trial as I've described and defined certain

11    procedures to be followed between now and then.

12         The attorneys will receive a copy of that order.  And I

13    do direct that they make sure that their client also receives

14    a copy of the order.

15         In all of these cases, if either side files a motion of

16    any sort, the opposing side will have 14 days in which to

17    respond.

18         Mr. Murphy, Rosales, and Flores are now in the custody

19    of the United States marshal, and it is appropriate that

20    following this hearing that they remain in that custody.

21         The other defendants are free on conditions of pretrial

22    release, and it's appropriate that they remain on those

23    conditions of pretrial release.

24         Mr. Mahler, did you say something?

25         THE INTERPRETER:  I just translated what you said.

1          THE COURT:  Oh, of course.

2      In any event, you will remain free on those conditions

3  of pretrial release.

4      And let me emphasize how important to you it is that you

5  faithfully follow those conditions.

6      Are there any of the defendants have any questions at

7  this time?

8                    (No response.)

9          THE COURT:  I gather not.

10     Do any of the attorneys have any matters to take up with

11  the court in connection with these hearings?

12         MR. BURGESS:  Not from defendant, sir.

13         MR. BELCHER:  No, Your Honor.

14         MR. DANIELSON:  No, Your Honor.

15         THE COURT:  Very well.

16     This is the Thanksgiving Season.  Tomorrow is

17  Thanksgiving.  We're all in very different situations, but no

18  matter our situation we all have things to be thankful for.

19  And I wish all of you to have the very best Thanksgiving that

20  is possible under the circumstances.

21     Mr. Lewis, did have you anything?

22         MR. LEWIS:  No, sir.

23         THE COURT:  Very well.

24     That concludes these hearings.  We are adjourned.

25         THE SECURITY OFFICER:  All rise.

1                    (End of proceeding 9:56 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3    I, RANDY M. WILSON, C.S.R., certify that at the time of

4 electronic filing the foregoing is a true and correct, to the

5 best of my abilities, of the pages of the stenographic notes

6 provided to me by the court of the proceedings taken at the

7 date and time previously stated in the foregoing entitled

8 matter.

9

10    I further certify that I am neither counsel for, related

11 to, nor employed by any of the parties to the action in which

12 this hearing was taken and further I am not financially or

13 otherwise interested in the outcome of the action.

14

15    I certify that the transcript fees format comply with

16 those prescribed by the Court and the Judicial Conference of

17 the United States.

18

19     This the 13th day of November, 2010.

20

21

22                    s/RANDY M. WILSON

23              _____

24              RANDY M. WILSON, C.S.R.
                Official Court Reporter
                The Northern District of Texas
25                    Dallas Division