```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
 2                      FORT WORTH DIVISION

 3

 4   UNITED STATES OF AMERICA      (  4:09-CR-160-A
                                   (
 5   VERSUS                        (  DALLAS, TEXAS
                                   (
 6   ISIDRO LOZANO                 (  DECEMBER 11, 2009

 7

 8                  TRANSCRIPT OF REARRAIGNMENT
               BEFORE THE HONORABLE JOHN MCBRYDE
 9                UNITED STATES DISTRICT JUDGE

10

11   A P P E A R A N C E S:

12

13   FOR THE GOVERNMENT:        JOSHUA T. BURGESS
                                Assistant United States Attorney
14                              801 Cherry Street
                                Burnett Plaza Suite 1700 Unit 4
15                              Fort Worth, Texas 76102
                                     817.252.5200
16

17
     FOR THE DEFENDANT:         MARK R. DANIELSON
18                              Law Office of Mark R. Danielson
                                601 Strada Circle, Suite 106
19                              Mansfield, Texas  76063
                                     817.845.3790
20

21

22   INTERPRETER:              FRANCISCO HERNANDEZ

23

24   COURT REPORTER:           RANDY M. WILSON, C.S.R.
                                1100 Commerce Street, Room 1625
25                              Dallas, Texas 75242
                                     214.766.9150
```

```
 1                    P R O C E E D I N G S:
 2            THE COURT:  I'm next calling in this same case,
 3     4:09-CR-160-A, United States of America versus Isidro Lozano.
 4         Mr. Burgess is here for the government.
 5         And Mr. Danielson is here for Mr. Lozano.
 6         Mr. Danielson, does your client need an interpreter?
 7              MR. DANIELSON:  He does, Your Honor.
 8            THE COURT:  Mr. Hernandez is here for that purpose.
 9     He's been sworn, so we don't need to swear him again.
10         You need some equipment, Mr. Hernandez?
11         (Fransisco Hernendez, Interpreter, previously sworn.)
12              MR. DANIELSON:  We do, yes.
13            THE COURT:  Okay.  I'll ask the defendant to raise
14     his right hand to be sworn.
15                      (Defendant Lozano sworn.)
16            THE COURT:  Mr. Lozano, do you understand that
17     you're now under oath and that if you answer any of my
18     questions falsely your answers could later be used against
19     you in a prosecution for perjury, or making a false
20     statement?
21            DEFENDANT LOZANO:  I do.
22            THE COURT:  What skills do you have in the English
23     language?  How well can you read, write, understand, and
24     speak in the -- and speak the English language?
25            DEFENDANT LOZANO:  20 percent.
```

```
 1              THE COURT:  Okay.
 2         What is your full name?
 3              DEFENDANT LOZANO:  Isidro Lozano-Perez.
 4              THE COURT:  What is the last name?
 5              DEFENDANT LOZANO:  Lozano.
 6              THE COURT:  No, but the last name you said.
 7              DEFENDANT LOZANO:  Perez.
 8              THE COURT:  Spell that for me.
 9              DEFENDANT LOZANO:  P-E-R-E-Z.
10              THE COURT:  Perez.  I'm sorry.  I didn't understand
11    what you were saying.
12         Do you normally go by the surname "Lozano"?
13              DEFENDANT LOZANO:  Yes.
14              THE COURT:  Okay.  Why don't you step back with
15    your attorney just a minute.
16         And next I'm calling in this same case, Number
17    4:09-CR-160-A, it's United States of America versus Eduardo
18    Flores this time.
19         Mr. Burgess is here for the government.
20         And Mr. Stickels is here for the defendant.
21         Mr. Flores, raise your right hand to be sworn.
22                    (Defendant Flores sworn.)
23              THE COURT:  Mr. Flores, do you understand that
24    you're now under oath and that if you answer any of my
25    questions falsely your answers could later be used against
```

```
 1   you in a prosecution for perjury, or making a false
 2   statement?
 3             DEFENDANT FLORES:  Yes, I do, Your Honor.
 4             THE COURT:  How -- how -- I take it you read,
 5   write, and understand the English language proficiently?
 6             DEFENDANT FLORES:  Yes, Your Honor.
 7             THE COURT:  Okay.  And what is your full name?
 8             DEFENDANT FLORES:  Eduardo Flores-Garza.
 9             THE COURT REPORTER:  Say that last name again,
10   please.
11             DEFENDANT FLORES:  Flores-Garza.
12             THE COURT:  Okay.  Spell that very last part.
13             DEFENDANT FLORES:  G-A-R-Z-A.
14             THE COURT:  Okay.  And do you normally go by the
15   surname "Flores"?
16             DEFENDANT FLORES:  Yes.  Yes, sir.
17             THE COURT:  Okay.  Why don't you step back with
18   your attorney a minute.
19        Okay.  I'm next calling Number 4:09-CR-134-A, United
20   States of America versus Gary Wayne Sides.
21        Mr. Bradford is here for the government.
22        Mr. Belcher is here for the defendant.
23        Mr. Sides, raise your right hand to be sworn.
24                   (Defendant Sides sworn.)
25             THE COURT:  Mr. Sides, do you understand that
```

```
1    you're now under oath and that if you answer any of my
2    questions falsely your answers could later be used against
3    you in a prosecution for perjury --
4              DEFENDANT SIDES:  Yes, sir.
5              THE COURT:  -- or making a false statement?
6              DEFENDANT SIDES:  Yes, sir.
7              THE COURT:  And I take it you read, write, and
8    understand the English language proficiently?
9              DEFENDANT SIDES:  Yes, sir.
10             THE COURT:  And what is your full name?
11             DEFENDANT SIDES:  Gary Wayne Sides.
12             THE COURT:  Why don't you step back a minute with
13   your attorney.
14        Go down to the end of the line there.
15        Okay.  I'm next calling Number 4:09-CR-160-A, United
16   States of America versus Juan Ramirez.
17        Mr. Burgess is here for the government.
18        And Mr. Belcher is here for the defendant.
19        Mr. Ramirez, raise your right hand to be sworn.
20                  (Defendant Ramirez-Pulido sworn.)
21             THE COURT:  Okay.  Does your client need an
22   interpreter?
23             MR. BELCHER:  Yes, he does, Your Honor.
24             THE COURT:  Okay.  Francisco Hernandez is here for
25   that purpose.
```

```
 1          Let's see, I don't believe he's -- has he already been
 2    sworn in this case with one of these earlier defendants?
 3                MR. BURGESS:  Yes, sir.
 4          (Francisco Hernandez, Interpreter, previously sworn.)
 5                THE COURT:  Okay.  Mr. Rosales.
 6          This is directed to the defendant -- well, raise your
 7    right hand to be sworn.
 8                MR. BELCHER:  You've already sworn him.
 9                THE COURT:  Oh, you've already sworn him.  I'm
10    sorry.
11          We're doing things over and over again.  You can put
12    your hand down.  You've done that.
13          Do you understand that you're now under oath and that if
14    you answer any of my questions falsely your answers could
15    later be used against you in a prosecution for perjury, or
16    making a false statement?
17          Do you understand that?
18                DEFENDANT RAMIREZ:  I do.
19                THE COURT:  What are your skills in the English
20    language?  How well can you read, write, understand, and
21    speak the English language?
22                DEFENDANT RAMIREZ:  About 40 percent.
23                THE COURT:  Okay.  Why don't you -- what -- what is
24    your full name?
25                DEFENDANT RAMIREZ:  Juan Manuel Ramirez-Pulido.
```

1          THE COURT:  Why don't you -- I have Juan Ramirez,

2     but I didn't understand for sure what the other parts were.

3       What was the name after Juan?

4          DEFENDANT RAMIREZ:  Manuel.

5          THE COURT:  Spell that -- spell that for me.

6          DEFENDANT RAMIREZ:  M-A-N-U-E-L.

7          THE COURT:  Okay.  And what came after Ramirez?

8     What was at the very end of it?

9          MR. BELCHER:  It was Pulido, Your Honor,

10    P-U-L-I-D-O.

11         THE COURT:  Okay.

12      Do you normally go by the surname "Ramirez"?

13         DEFENDANT RAMIREZ:  Yes.

14         THE COURT:  Okay.  Y'all go back at the end of the

15    line over there.

16      I'm next calling Number 4:09-CR-115-A, United States of

17    America versus Steven Ray Adams.  Mr. -- who is here for the

18    government?

19      Mr. Schattman?

20      Mr. Schattman is here for the government.

21      And Mr. Durden is here for the defendant.

22      And I'll ask the defendant to raise his right hand to be

23    sworn.

24                    (Defendant Adams sworn.)

25         THE COURT:  Mr. Adams, do you understand that

```
1   you're now under oath and that if you answer any of my
2   questions falsely your answers could later be used against
3   you in a prosecution for perjury, or making a false
4   statement?
5              DEFENDANT ADAMS:  Yes, Your Honor.
6              THE COURT:  And I take it you read, write,
7   understand, and speak the English language proficiently?
8              DEFENDANT ADAMS:  Correct.
9              THE COURT:  Okay.  What is your full name?
10             DEFENDANT ADAMS:  Steven Ray Adams.
11             THE COURT:  Okay.  Why don't you and your attorney
12  step back a minute.
13        I'm next calling in this same case, 4:09-CR-115-A,
14  United States of America.  And this time the defendant is
15  Miyoshia Wylynn Nance.
16        Of course, Mr. Schattman is here for the government
17  still.
18        And Mr. Wyatt is here for the defendant.
19        I'll ask the defendant to raise her right hand to be
20  sworn.
21                  (Defendant Nance sworn.)
22             THE COURT:  Do you understand that you're now under
23  oath and that if you answer any of my questions falsely your
24  answers could later be used against you in a prosecution for
25  perjury, or making a false statement?
```

1  DEFENDANT NANCE:  Yes, sir.

2  THE COURT:  And I take it you read, write, and

3  understand -- read, write, understand, and speak the English

4  language proficiently?

5  DEFENDANT NANCE:  Yes, sir.

6  THE COURT:  What is your full name?

7  DEFENDANT NANCE:  My name is Miyoshia Wylynn Nance.

8  THE COURT:  Okay.

9  Okay.  Y'all can just stay where you are, if you would

10  like.

11  I have in front of me all nine defendants who are, to my

12  understanding, to plead guilty to some offense; and I'm going

13  to give each of you some explanations that are very

14  important, bearing in mind your intent to plead guilty, so

15  listen closely.  I'm going to start by explaining to you the

16  constitutional rights you have.

17  You, and each of you, may, if you choose, plead not

18  guilty to any offense charged against you or persist in that

19  plea if it already has been made.

20  If you plead not guilty, the Constitution of the United

21  States guarantees to you the following rights:

22  The right to a speedy and public trial by a jury in this

23  District.

24  The right at such a trial for you to confront, that is,

25  to see, hear, and cross-examine all witnesses against you.

1        The right to use the power and process of the court to

2   compel the production of any evidence, including the

3   attendance of any witnesses in your favor.

4        The right to have the assistance of an attorney in your

5   defense at all stages of the proceedings.  If necessary, an

6   attorney will be appointed to represent a defendant who does

7   not have an attorney.

8        And you cannot be compelled to testify.  The decision of

9   whether you will testify or not is a matter in which your

10  judgment will control.

11       The United States government must prove your guilt

12  beyond a reasonable doubt.

13       If you're found guilty, you have the right to appeal

14  your conviction.

15       Defendant Perales, do you have -- do you understand that

16  you have those constitutional rights?

17            DEFENDANT PERALES:  Yes.

18            THE COURT:  Defendant Fuentes, do you understand

19  you have the constitutional rights I've just described?

20            DEFENDANT FUENTES:  Yes.

21            THE COURT:  Defendant Rosales, do you understand

22  you have the constitutional rights I've just described?

23            DEFENDANT ROSALES:  Yes.

24            THE COURT:  Defendant Lozano, do you understand you

25  have the constitutional rights I've just described?

1          DEFENDANT LOZANO:  Yes.

2          THE COURT:  Defendant Flores, do you understand you

3    have the constitution rights I've just described?

4          DEFENDANT FLORES:  Yes, Your Honor.

5          THE COURT:  Defendant Sides, do you understand that

6    you have the constitutional rights I've just described?

7          DEFENDANT SIDES:  Yes, Your Honor.

8          THE COURT:  Defendant Ramirez, do you understand

9    you have the constitutional rights I've just described?

10         DEFENDANT RAMIREZ:  Si.

11         THE COURT:  Was that a "yes"?

12         DEFENDANT RAMIREZ:  (Through interpreter)  Yes.

13         THE COURT:  Defendant Adams, do you understand that

14   you have those -- the constitutional rights I've just

15   described?

16         DEFENDANT ADAMS:  Yes, Your Honor.

17         THE COURT:  Defendant Nance, do you understand you

18   have the constitutional rights I've just described?

19         DEFENDANT NANCE:  Yes, sir.

20         THE COURT:  Okay.  I'm going to give all of you

21   some further explanations that are very important, bearing in

22   mind your intent to plead guilty, so listen closely.

23      If you plead guilty, and if such a plea is accepted by

24   the court, there will not be a further trial of any kind.  So

25   by pleading guilty, you waive the right to a trial, as well

as those other rights associated with a trial, as I have described them.

Generally, a defendant who is accused of a crime cannot plead guilty unless he or she is actually guilty of that crime.

In federal court, the judge determines the penalty if a defendant is convicted whether it is on a verdict of a jury or upon a plea of guilty.

Other than the staff of the court, the court has not and will not talk to anyone about the facts of your case except here in your presence, where you, your attorney, and representatives of the government are all present.

If you should be convicted, you and your lawyer each will be given an opportunity to present to the court any pleas for leniency.

The penalty will be decided on the basis of the facts set forth in the presentence report and facts heard here.

You should never depend or rely upon any statement or promise by anyone, whether connected with a law enforcement agency or the government or anyone else as to what penalty will be assessed against you.

Should you decide to plead guilty, your plea of guilty must not be induced or prompted by any promises, mental pressure, threats, force, coercion, or pressure of any kind.

A plea of guilty must be purely voluntary, and you

should plead guilty only because you're guilty and for no
other reason.

Now, one or more of you, I believe, will be pleading
guilty pursuant to a plea agreement. I'll probably ask
questions about the plea agreement and might or might not
order it filed. More than likely, I won't be in a position
today to determine whether I accept or reject a plea
agreement.

If later on I conclude that a plea agreement should be
rejected, and if I, in fact, do reject it, I'll notify the
defendant -- affected defendant and the attorneys that I've
done so and will give that defendant an opportunity to
withdraw his plea of guilty. And, of course, if I reject the
plea agreement, neither the defendant nor the government will
have any rights or obligations under that plea agreement.

Now, the offense to which each of you proposes to plead
guilty is a felony. An adjudication of guilt of such an
offense may deprive a defendant of valuable rights, such as
the right to vote, to hold public office, to serve on a jury,
to possess any kind of firearm, and other rights.

An adjudication of guilt could result in deportation,
that is, being required to leave the United States, of a
defendant who is an alien, and could adversely affect such a
defendant's ability ever to become a citizen of the United
States.

1          Defendant Perales, have you understood the additional
2     explanations I've given you?
3               DEFENDANT PERALES:  Yes.
4               THE COURT:  Defendant Fuentes, have you understood
5     the additional explanations I've given you?
6               DEFENDANT FUENTES:  Yes.
7               THE COURT:  Defendant Rosales, have you understood
8     the additional explanations I've given you?
9               DEFENDANT ROSALES:  Yes.
10               THE COURT:  Defendant Lozano, have you understood
11     the additional explanations I've given you?
12               DEFENDANT LOZANO:  Yes.
13               THE COURT:  Defendant Flores, have you understood
14     the additional explanations I've given you?
15               DEFENDANT FLORES:  Yes, Your Honor.
16               THE COURT:  Defendant Sides, have you understood
17     the additional explanations I've given you?
18               DEFENDANT SIDES:  Yes, Your Honor.
19               THE COURT:  Defendant Ramirez, have you understood
20     the additional explanations I've given you?
21               DEFENDANT RAMIREZ:  Yes.
22               THE COURT:  Defendant Adams, have you understood
23     the additional explanations I've given you?
24               DEFENDANT ADAMS:  Yes, Your Honor.
25               THE COURT:  Defendant Nance, have you understood

1   the additional explanations I've given you?

2              DEFENDANT NANCE:  Yes, sir.

3              THE COURT:  Okay.  I'm going to go over now with

4   you the sentencing process.  I'm going to give you

5   explanations about that -- the sentencing process, and these

6   are very important, bearing in mind your intent to plead

7   guilty, so listen closely.

8       Now, under the Sentencing Reform Act of 1984, the United

9   States Sentencing Commission has issued guidelines for judges

10  to follow in determining the sentence in a criminal case.

11  Those guidelines have been determined to be advisory only,

12  but they must be taken into account by the court in

13  determining what sentence to impose.

14      Before I go any further with my explanation about the

15  sentencing process, I'm going to ask each of you a question:

16      Defendant Perales, have you and your attorney discussed

17  how the sentencing guidelines might apply to your case?

18              DEFENDANT PERALES:  Yes.

19              THE COURT:  Defendant Fuentes, have you and your

20  attorney discussed how the sentencing guidelines might apply

21  to your case?

22              DEFENDANT FUENTES:  Yes.

23              THE COURT:  Defendant Rosales, have you and your

24  attorney discussed how the sentencing guidelines might apply

25  to your case?

```
 1                DEFENDANT LOZANO:  Yes.

 2                THE COURT:  Defendant Lozano, have you and your

 3       attorney discussed how the sentencing guidelines might apply

 4       to your case?

 5                MR. SHAW:  Your Honor, if it pleases the court,

 6       someone answered for Mr. Rosales.  I think he got mixed up.

 7          Could we try Mr. Rosales again?

 8                THE COURT:  Let me go back to Mr. Rosales.

 9          Have you and your attorney discussed how the sentencing

10       guidelines might apply to your case?

11                DEFENDANT ROSALES:  I wish to talk with the judge

12       about some conflict that I have with my attorney.

13                THE COURT:  Let's see, who is his attorney?

14                MR. SHAW:   That's Jim Shaw, Your Honor.

15          If it please the court, you sent me an order to respond

16       by Monday morning on a letter that he had written to you, and

17       he is -- his own explanation today is that he wants to,

18       quote, wait.

19                THE COURT:  He doesn't want to enter a plea of

20       guilty?

21                DEFENDANT ROSALES:  The thing that happened is that

22       I have a conflict with my attorney, and we don't understand

23       each other.  And I'd like to have a little more professional

24       help -- assistance in my case.  I have a doubt about the

25       capacity of the attorney, but in this case I understand that
```

```
 1    he is not helping me enough.
 2              THE COURT:  Well, we won't take a plea from him
 3    today.
 4              MR. SHAW:  Thank you, Your Honor.
 5              THE COURT:  When is this case set for trial?
 6              MR. BURGESS:  January 5th, Your Honor.
 7              THE COURT:  We won't take a plea from him today.
 8    And then I've urge you to meet with him Monday.
 9              MR. SHAW:  You ordered me to meet with him before
10    today at 3:00 p.m.  I met with him immediately.  You
11    requested a report by Monday morning at 10:00 a.m.
12              THE COURT:  Okay.  Well, why don't you make that
13    report, and we'll decide where we go from there.
14              MR. SHAW:  Thank you, Your Honor.
15         May I be excused?
16              THE COURT:  You're excused.  And your client's
17    remanded to custody.
18              MR. SHAW:  Thank you, Your Honor.
19              THE COURT:  Okay.  Let me go back to where we are.
20         Mr. Lozano, have you understood the explanations I have
21    given you since I described the -- your constitutional
22    rights?
23              DEFENDANT LOZANO:  Yes.
24              THE COURT:  Mr. Flores, have you understood the
25    explanations I've given you since I've described your
```

1  constitutional rights?

2          DEFENDANT FLORES:  Yes, Your Honor, I do.

3          THE COURT:  Defendant Sides, have you understood

4  those additional explanations I've given you?

5          DEFENDANT SIDES:  Yes, Your Honor.

6          THE COURT:  Defendant Ramirez, have you understood

7  the additional explanations I've given you?

8          DEFENDANT RAMIREZ:  Yes.

9          THE COURT:  Wait.  I'm getting out of sync, aren't

10  I?

11          MR. HERMESMEYER:  Your Honor, you were --

12          THE COURT:  I know where I was.  I'm sorry.

13      When I'm -- when I'm going down and the way I do this,

14  if I get interrupted, no telling where I'll start again.

15      Mr. Lozano, have you discussed with your attorney how

16  the sentencing guidelines might apply to your case?

17          DEFENDANT LOZANO:  Yes.

18          THE COURT:  Mr. Flores, have you discussed with

19  your attorney how the sentencing guidelines might apply to

20  your case?

21          DEFENDANT FLORES:  Yes, Your Honor.

22          THE COURT:  Mr. Sides, have you discussed with your

23  attorney how the sentencing guidelines might apply to your

24  case?

25          DEFENDANT SIDES:  Yes, Your Honor.

1          THE COURT:  Mr. -- Defendant Ramirez, have you

2    discussed with your attorney how the sentencing guidelines

3    might apply to your case?

4          DEFENDANT RAMIREZ:  Yes.

5          THE COURT:  Defendant Adams, have you discussed

6    with your attorney how the sentencing guidelines might apply

7    to your case?

8          DEFENDANT ADAMS:  Yes, Your Honor.

9          THE COURT:  Okay.  And, Defendant Nance, have you

10   and your attorney discussed how the sentencing guidelines

11   might apply to your case?

12         DEFENDANT NANCE:  Yes, sir.

13         THE COURT:  Okay.  I'm going on now with my

14   explanations about the sentencing process, so listen closely.

15       The court is required to consider any applicable

16   sentencing guidelines but may depart from the guidelines

17   under some circumstances.

18       The court is not bound by facts that are stipulated

19   between the defendant, on the one hand, and the government,

20   on the other.

21       The court can impose punishment that might disregard

22   stipulated facts or take into account facts not mentioned in

23   the stipulated facts.

24       You might not be permitted to withdraw your plea of

25   guilty in such an event.

The court will not be able to determine the guideline sentence for your case until after the presentence report has been completed and you and the government have had an opportunity to challenge the facts and conclusions reported by the probation officer.

After the court has determined what guidelines apply to a case, the court has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines.

Under some circumstances the defendant or the government may have a right to appeal the sentence the court imposes.

Parole has been abolished, and if you're sentenced to prison you will not be released on parole.

Now, as soon as this hearing is over as to each of you this morning, you and your attorney, or your attorney, depending on what the custody situation is, will go across the hall and set up a time when the probation officer who will be assigned to your case can interview you.

Your attorney can be present when that interview occurs if appropriate arrangements are made.

And I'll add that the degree of your cooperation with the probation officer can be a factor in the severity of your sentence.  That's something you'll want to discuss with your attorney.

The purpose of that interview is so the probation

1    officer can obtain from you information you have relevant to

2    the sentencing process.

3        In addition to obtaining information from you on that

4    subject, the probation officer will obtain information from

5    other sources, such as the prosecutor, the investigating

6    agency, maybe your family members, maybe your employer or

7    former employers, and perhaps other sources.

8        Once the probation officer has enough information to

9    form opinions as to what the sentencing guidelines -- which

10   of the sentencing guidelines apply to your case and what the

11   sentencing ranges are in your case, the probation officer

12   will prepare a written document called a presentence report

13   and will put those opinions in that report.

14       In addition to the opinions, the report will contain a

15   recitation that -- recitation of facts the probation officer

16   relied on in reaching those opinions.

17       I rely very heavily on those reports in determining what

18   sentence to impose.  So they need to be as complete and as

19   accurate as possible.  You'll get a copy of that report.  And

20   your attorney will get a copy.  And I'll get the original.

21       Be sure that if you read English, that you read the

22   report; and if you don't read English that it's read to you

23   in your language.  And if you think anything's left out of

24   the report that ought to be in it, or if you think something

25   in the report is inaccurate, tell your attorney about it so

1    your attorney can make an appropriate objections to the

2    report, if your attorney agrees or concludes that what you've

3    been -- or what you told the attorney is a suitable basis for

4    an objection.  And I'll rule on those objections at or before

5    the sentencing hearing.  And you'll -- you'll be permitted to

6    speak on your behalf at the sentencing hearing.

7        Now, the sentencing hearing in the case -- the cases of

8    Defendants Sides, Perales, and Fuentes, and -- those three,

9    Sides, Perales, and Fuentes, the sentencing hearing in your

10   cases will be at 9:00 o'clock a.m. on March 26, 2010.

11       In the cases of Lozano and Flores, your sentencing

12   hearings will be at 9:00 o'clock a.m. on April 2, 2010.

13       In the cases of Adams and Nance, your sentencing

14   hearings will be at 9:00 a.m. on April, 9, 2010.

15       All of the sentencing hearings will be before me in this

16   courtroom.

17       I'll be signing an order today as to each of you fixing

18   the time and date for your sentencing and establishing a

19   timetable for accomplishment of things that have to be

20   accomplished between now and the sentencing date, the date of

21   the hearing.  Each of the attorneys will receive a copy of

22   that order.  And your attorney will see that you receive a

23   copy.  And if you don't speak English -- I mean, if you don't

24   read English, will see that it's read to you in your

25   language.

1          Defendant Perales, have you understood all the

2     explanations I've given you about the sentencing process?

3               DEFENDANT PERALES:  Yes.

4               THE COURT:  Defendant Fuentes, have you understood

5     all the explanations I've given you about the sentencing

6     process?

7               DEFENDANT FUENTES:  Yes, sir.

8               THE COURT:  Defendant Lozano, have you understood

9     all the explanations I've given you about the sentencing

10    process?

11              DEFENDANT LOZANO:  Yes.

12              THE COURT:  Defendant Flores, have you understood

13    all the explanations I've given you about the sentencing

14    process?

15              DEFENDANT FLORES:  Yes, Your Honor.

16              THE COURT:  Defendant Sides, have you understood

17    all the explanations I've given you about the sentencing

18    process?

19              DEFENDANT SIDES:  Yes, Your Honor.

20              THE COURT:  Defendant Ramirez, have you understood

21    all the explanations I've given you about the sentencing

22    process?

23              DEFENDANT RAMIREZ:  Yes.

24              THE COURT:  Defendant Adams, have you understood

25    all the explanations I've given you about the sentencing

1      process?

2                DEFENDANT ADAMS:  Yes, Your Honor.

3                THE COURT:  And, Defendant Nance, have you

4      understood all the explanations I've given you about the

5      sentencing process?

6                DEFENDANT NANCE:  Yes, sir.

7                THE COURT:  Let's see, we have some defendants who

8      are here with the intent to waive the return of an indictment

9      and proceed on the basis of an information; is that correct?

10               MR. BELCHER:  Yes, Your Honor.

11               THE COURT:  That would be Defendant Ramirez and

12     Defendant Adams and Defendant Nance; is that correct?

13               MR. WYATT:  Yes, Your Honor.

14               THE COURT:  Anybody else?

15                         (No response.)

16               THE COURT:  Okay.  The explanation I'm giving you

17     now is directed to those three defendants, Defendants

18     Ramirez, Adams, and Nance.  Listen closely.  These are

19     important because, according to my understanding, each of you

20     plans to waive the return of an indictment as to the offense

21     to which you propose to plead guilty, and each of you plans

22     to proceed on the basis of an information filed by the United

23     States attorney.

24          I want you to be sure you understand your rights

25     relative to the return of an indictment and what a grand jury

1    is.  So the three of you listen closely to what I'm getting
2    ready to tell you.
3         Because you're charged with a felony, you have the
4    constitutional right to be charged by the indictment of a
5    grand jury.  But you can waive that right and consent to
6    being charged by the information of the United States
7    attorney.  A grand jury is composed of at least 16 and not
8    more than 23 persons.  At least 12 -- 12 grand jurors must
9    find that there is probable cause to believe that the crime
10   charged against you was committed, and that the accused
11   person committed that crime before the accused person can be
12   indicted.
13        Now, instead of an indictment against you, the offense
14   to which you propose to plead guilty has been brought against
15   you by the United States attorney by the filing of an
16   information.  Unless you waive the return of an indictment as
17   to that offense, we can't proceed on the basis of that
18   information.  If you do not waive the return of an indictment
19   as to that offense, the government may or may not present the
20   case to the grand jury as to that offense and may or may not
21   request that the grand jury indict you of that offense.
22        And even if the government were to do that, the grand
23   jury might or might not indict you as to that offense, even
24   if the case were presented to them.
25        However, if you waive the return of the indictment by a

1    grand jury as to the offense, the case as to that offense

2    would proceed against you on the basis of the United States

3    attorney's information just as though you had been indicted.

4        Okay.  I'm going to ask Defendants Ramirez, Adams, and

5    Nance some questions that bear on the waiver of the

6    indictment.

7        I'll start with Defendant Ramirez.

8        Do you understand the explanations I've given you

9    concerning your right to be indicted, your right to waive

10    indictment and to proceed on the basis of an information, and

11    concerning a grand jury?  Do you understand all those

12    explanations I've given you?

13              DEFENDANT RAMIREZ:  Yes.

14              THE COURT:  Have you discussed with your attorney

15    whether you should waive the return of an indictment by a

16    grand jury?

17              DEFENDANT RAMIREZ:  Yes.

18              THE COURT:  Do you understand that you have the

19    right to insist on being indicted on an indictment by a grand

20    jury as to the two offense -- offenses, two offenses charged

21    by the information in this case before proceeding further on

22    the basis of that information?

23        Do you understand that?

24              DEFENDANT RAMIREZ:  Yes.

25              THE COURT:  Have any threats or promises been made

1  to induce you to waive the return of an indictment to the

2  offenses charged by the information?

3        DEFENDANT RAMIREZ:  No.

4        THE COURT:  And is it your wish to waive the return

5  of an indictment as to the offenses charged by the

6  information?

7        DEFENDANT RAMIREZ:  Yes.

8        THE COURT:  Okay.  Have you received a copy of the

9  information that you propose to plead guilty to?

10        DEFENDANT RAMIREZ:  Yes.

11        THE COURT:  And has it been read to you in your

12  language?

13        DEFENDANT RAMIREZ:  Yes.

14        THE COURT:  Do you understand exactly what it

15  charges you with?

16        DEFENDANT RAMIREZ:  Yes.

17        THE COURT:  Okay.  I'm going to ask that it be read

18  aloud.  It's not going to be long.

19        MR. BURGESS:  The information, Your Honor?

20        THE COURT:  Yes.

21        MR. BURGESS:  Thank you.

22     On or about August the 29th, 2008, in the Fort Worth

23  Division of the Northern District of Texas, the defendant,

24  Juan Ramirez, knowingly made a false statement and

25  representation to M.L., doing business as Ammo Depot, a

1    person licensed to sell firearms under the provisions of

2    Chapter 44 of Title 18, United States Code, with respect --

3    to be kept in the records of M.L., in that the defendant did

4    state in the Department of Justice, Bureau of Alcohol,

5    Tobacco, Firearms, and Explosives Form 4473, Firearms

6    Transactions Records, that he lived at 4229 Alamo Street,

7    Fort Worth, Texas; whereas, in truth and fact, he was then

8    living at 4219 Lisbon Street, Fort Worth, Texas.  In

9    violation of 18 U.S.C., 924(a)(1)(A).

10         Count 2.

11         On or about September the 20th, 2008, in the Fort Worth

12    Division of the Northern District of Texas, the defendant,

13    Juan Ramirez, knowingly made a false statement and

14    representation to D.N., doing business as Military Gun

15    Supply, a person licensed to sell firearms under the

16    provisions of Chapter 44 of Title 18, United States Code,

17    with respect to information required by the provisions of

18    Chapter 44 of Title 18, United States Code, to be kept in the

19    records of D.N., in that the defendant did state in a

20    Department of Justice, Bureau of Alcohol, Tobacco, Firearms,

21    and Explosives Form 4473, Firearms Transactions Records, that

22    he lived at 4229 Alamo Street, Fort Worth, Texas; whereas, in

23    truth and fact, he was then living at 4212 Lisbon Street,

24    Fort Worth, Texas.  In violation of 18 U.S.C., Section

25    924(a)(1)(A).

1     There is also a forfeiture allegation, Your Honor.

2          THE COURT:  Yeah.  Go ahead and read it.

3          MR. BURGESS:  Upon conviction of any of the

4     offenses alleged in Count 1 or 2 of this superseding

5     information and pursuant to 18 U.S.C., Section 924(d), and 28

6     U.S.C., Section 9 -- excuse me, Section 2461(c), the

7     defendant, Juan Ramirez, shall forfeit to the United States

8     of America all firearms and ammunition involved or used in

9     the respective offense.

10     Signed by myself.

11          THE COURT:  Okay.  Defendant Ramirez, you've heard

12     the information read.  Do you understand exactly what you're

13     charged with?  And do you understand there's a forfeiture

14     allegation in that information?

15     Do you understand all those things?

16          DEFENDANT RAMIREZ:  Yes, sir.

17          THE COURT:  Mr. Belcher, do you see any reason why

18     your client should not waive the return of an indictment as

19     to the offenses charged in the information?

20          MR. BELCHER:  No, I do not, Your Honor.

21          THE COURT:  And would a waiver by your defendant be

22     consistent with your advice to him?

23          MR. BELCHER:  It would, Your Honor.

24          THE COURT:  Okay.  Why don't y'all sign the written

25     waiver at this time.

1          MR. BELCHER:  May I approach, Your Honor?

2          THE COURT:  Yes.

3      And why don't you read it aloud.  It's best to read the

4  waiver aloud, if you have one.

5          MR. BELCHER:  That was the only copy I have.

6          THE COURT:  You don't have one, Mr. Belcher?

7      You don't have a copy of the waiver?

8          MR. BURGESS:  I -- I don't believe I do either,

9  Your Honor.  If I can retrieve it, I'm happy to read it into

10  the record.

11          THE COURT:  Okay.  Just a second.  I'll hand it

12  back to you.

13          MR. BURGESS:  Waiver of Indictment.

14      I, Juan Ramirez, the above-named defendant, who is

15  accused of two counts of making a false statement during the

16  purchase of a firearm, in violation of 18 U.S.C., Section

17  924(a)(1)(A), being advised of the nature of the charges, the

18  proposed information, and of my rights, hereby waive

19  prosecution by indictment and consent that the proceeding may

20  be by information rather than by indictment.

21      Signed this 11th day of December, 2009, by Defendant

22  Juan Ramirez and Matthew Belcher, attorney for defendant.

23          THE COURT:  Okay.  Why don't you hand that back.

24      Okay.  I find that the defendant is fully competent and

25  capable of waiving the return of an indictment as to the

offenses charged by the superseding information in this case and that such a waiver has been knowingly and voluntarily made.  So I accept that waiver, and I'm indicating my acceptance by signing the waiver of indictment form.  And I'll order it to be filed.

Okay.  Let me ask Defendant Adams some questions concerning the waiver of indictment he proposes to make.

Defendant Adams, did you understand the explanations I gave you about your -- concerning your right to insist on an indictment, your right to waive the return of an indictment and to proceed on the basis of an information, and concerning a grand jury?

DEFENDANT ADAMS:  Yes, Your Honor.

THE COURT:  Have you discussed the matter of waiving your right to an indictment by a grand jury as to the offenses charged by the information with your attorney?

DEFENDANT ADAMS:  Yes, Your Honor.

THE COURT:  Do you fully understand that you have the right to insist on an indictment by a grand jury as to those offenses before -- before proceeding further?

DEFENDANT ADAMS:  I do.

THE COURT:  Have any threats or promises been made to induce you to waive the return of an indictment as to those offenses?

DEFENDANT ADAMS:  No, sir.

```
1            THE COURT:  And is it your wish to waive the return
2    of an indictment as to those offenses?
3            DEFENDANT ADAMS:  Yes, Your Honor.
4            THE COURT:  Have you received a copy of the
5    superseding information?
6            DEFENDANT ADAMS:  Yes, I have.
7            THE COURT:  And have you read it and understand
8    exactly what you're charged with?
9            DEFENDANT ADAMS:  Yes, Your Honor.
10           THE COURT:  Okay.  I'm going to ask that it be read
11   aloud.
12           MR. DURDEN:  Your Honor, if it please the court,
13   Mr. Adams has reviewed the superseding information --
14           THE COURT:  I'm going to ask that it be read aloud,
15   Mr. Schattman.
16           MR. SCHATTMAN:  United States of America versus
17   Steven Ray Adams.
18       Superseding Information.
19       The United States Attorney charges:
20       Count 1.
21       Conspiracy to maintain drug involved premises.
22       Commencing on or about June 1, 2009, and continuing
23   thereafter until on or about August 20th, 2009, in the Fort
24   Worth Division of the Northern District of Texas, Steven Ray
25   Adams, also known as "Duck," defendant, did intentionally and
```

knowingly combine, conspire, confederate, and agree with

others, to open, maintain, and use places, including 2116 San

Fernando, Bedford, Texas, and 715 Vine Street, Euless, Texas,

and 3716 Gazebo Court, Number 1824, Fort Worth, Texas, for

the purpose of distributing a Schedule II controlled

substance, methamphetamine.  In violation of 21 U.S.C.,

Sections 846 and 856.

Count 2.  Maintaining drug involved premises.

Commencing on or about June 1, 2009, and continuing

thereafter until on or about August 20, 2009, in the Fort

Worth Division of the Northern District of Texas, Steven Ray

Adams, also known as "Duck," defendant, did intentionally and

knowingly open, maintain, and use a place, namely, 715 Vine

Street, Euless, Texas, for the purpose of distributing the

Schedule II controlled substance, methamphetamine.  A

violation of 21 U.S.C., Section 856.

THE COURT:  You've heard the superseding

information read, Mr. Adams.  Do you understand those are the

offenses that you're charged that -- the information charges

you with?

DEFENDANT ADAMS:  Yes, Your Honor.

THE COURT:  And, Mr. Durden, do you see of any

reason why your client should not waive the return of an

indictment as to those offenses?

MR. DURDEN:  I see no reason, Your Honor.

```
 1                THE COURT:  And is such a waiver consistent with
 2    your advice to the defendant?
 3                MR. DURDEN:  It is, Your Honor.
 4                THE COURT:  Okay.  I'll ask that the written waiver
 5    form be signed.
 6          Okay.  Why don't you read it aloud.
 7                MR. SCHATTMAN:  Waiver of Indictment.
 8          I, Steven Ray Adams, also known as "Duck," the
 9    above-named defendant who is accused of conspiracy to
10    maintain drug involved premises in violation of 21 U.S.C.,
11    Sections 846 and 856; and of maintaining drug involved
12    premises in violation of 21 U.S.C., Section 856, and being
13    advised of the nature of the charges, the proposed
14    information, and of my rights, hereby waive in open court
15    prosecution by indictment and consent that the proceedings
16    may be by information rather than by indictment.
17                THE COURT:  Okay.  I'll order the waiver of
18    indictment be filed.
19          I find that the defendant is fully competent and capable
20    of waiving the return of an indictment as to the offenses
21    charged by the superseding information in this case, and that
22    such a waiver is knowing and voluntary.
23          I accept that waiver.  And I've indicated my acceptance
24    by signing the waiver of indictment form.  And, like I say,
25    I'm ordering that filed at this time.
```

1          Okay.  Let me ask Defendant Nance some questions

2     relating to her intent to plead guilty to a superseding

3     information.

4          Defendant Nance, did you understand all the explanations

5     I gave you concerning your right to insist on the return of

6     an indictment, your right to waive an indictment and to

7     proceed on the basis of an information, and concerning a

8     grand jury?

9               DEFENDANT NANCE:  Yes, sir.

10              THE COURT:  Have you discussed the matter of

11    waiving your right to an indictment as to the offense charged

12    by the superseding information in this -- in this case by a

13    grand jury with your attorney?

14              DEFENDANT NANCE:  Yes, sir.

15              THE COURT:  And do you understand that you have the

16    right to insist on an indictment by a grand jury as to the

17    offense charged by the superseding information before

18    proceeding further?

19              DEFENDANT NANCE:  Yes, sir.

20              THE COURT:  Have any threats or promises been made

21    to induce you to waive the return of an indictment?

22              DEFENDANT NANCE:  No, sir.

23              THE COURT:  Is it your wish to waive the return of

24    an indictment by a grand jury as to the offense charged by

25    the superseding information?

1     DEFENDANT NANCE:  Yes, sir.

2          THE COURT:  And I'll ask that that information be

3     read aloud at this time.

4          MR. SCHATTMAN:  United States of America versus

5     Miyoshia Wylynn Nance.

6     The United States Attorney charges:

7     Count 1.

8     Maintaining drug involved premises.

9     From on or about September 1, 2008, the exact date being

10    unknown, and continuing thereafter until August 20, 2009, in

11    the Fort Worth Division of the Northern District of Texas,

12    Miyoshia Wylynn Nance, defendant, did intentionally and

13    knowingly open, maintain, and use a place; to-wit, 2116 San

14    Fernando, Bedford, Texas, for the purpose of manufacturing

15    and distributing the Schedule II controlled substance

16    methamphetamine.  A violation of 21 U.S.C., Section 856.

17         THE COURT:  You've heard the superseding

18    information read, Count 1 of it.  Do you understand that

19    that's exactly what you're charged with?

20         DEFENDANT NANCE:  Yes, sir.

21         THE COURT:  Do you know of any reason, Mr. Wyatt,

22    why your client should not waive the return of an indictment

23    as to that offense?

24         MR. WYATT:  No, Your Honor.

25         THE COURT:  Is such a waiver consistent with your

1    advice to her?

2            MR. WYATT:  Yes, Your Honor.

3            THE COURT:  Okay.  I'll ask that the written waiver

4    form be signed and handed up.

5        And read it aloud.

6            MR. SCHATTMAN:  United States of America versus

7    Miyoshia Wylynn Nance.

8        Waiver of Indictment.

9        I, Miyoshia Wylynn Nance, the above-named defendant

10   who's accused of maintaining drug involved premises in

11   violation of 21 U.S.C., Section 856, and being advised of the

12   nature of the charges, the proposed information, and of my

13   rights, hereby waive in open court prosecution by indictment

14   and consent that the proceedings may be by information rather

15   than by indictment.

16           THE COURT:  I find that the defendant, Miyoshia

17   Wylynn Nance, is fully competent and capable of waiving the

18   return of an indictment as to the offense charged by the

19   information, and her waiver is a knowing and voluntary one.

20       I accept it.  And I've indicated my acceptance by

21   signing the waiver of indictment form at the place indicated.

22       And I'll order that it be filed.

23       Okay.  I'm going to start taking up each of the

24   defendants individually, and this is going to take awhile.  I

25   think what I'm going to do -- we'll take a recess somewhere

1    about the middle of it.  I think I'm going to tell the

2    marshal that if they want to, they can take Defendants Sides,

3    Ramirez, Adams, and Nance back downstairs.  And then we'll

4    take a recess before we need them and give you an opportunity

5    to bring them back up at that time.

6         And the attorneys representing those defendants, you do

7    whatever you want to do.  We're going to have a recess, and

8    then you'll need to be back in here after that recess.

9                        (Recess taken.)

10                (Proceedings continue at 12:10 p.m.)

11         THE COURT:  I'm call back now in Number

12   4:09-CR-160(8), Isidro Lozano.  United States versus Isidro

13   Lozano.

14         Mr. Burgess is here for the government.

15         And Mr. Danielson is here for the defendant.

16         And, of course, the interpreter is here.

17         MR. BURGESS:  Your Honor, if it please the court, I

18   just wanted to notify the court that Eduardo Flores has a

19   basically a mirror imagine plea agreement and the factuals

20   are slightly different but they both have plea agreements

21   that mirror one another.

22         THE COURT:  Okay.  Are the plea agreements the

23   same?

24         MR. BURGESS:  The plea agreements are the same with

25   the exception of one sentence, which I can point out when we

```
 1   get to that point, if the court wants me to address 'em at

 2   the same time?

 3               THE COURT:  Okay.  Thank you for calling it to my

 4   attention.

 5               MR. BURGESS:  Yes, Your Honor.

 6               THE COURT:  Is that the only thing in common, that

 7   will be the same?

 8               MR. BURGESS:  As far as these defendants?

 9               THE COURT:  Yes.

10               MR. BURGESS:  Yes, Your Honor.  Their factuals are

11   about the same instant but they're -- they're telling it from

12   different sides of the story.  The plea agreements are the

13   same except for one line in one paragraph.

14               THE COURT:  Okay.  Then I'm going to have Defendant

15   Flores and his attorney come up to the -- and y'all can sit

16   down at the able.

17        Mr. Stickels --

18               MR. STICKELS:  Mr. Flores, be seated here, Your

19   Honor?

20               THE COURT:  -- you and your client can sit down at

21   the table, you and Mr. Flores.

22        And the reason I'm having you up there, when he reads

23   the plea agreement, I'm going to have him read the plea

24   agreement, I want -- not only do I want Mr. Lozano to

25   understand what's being read at that time, I want your
```

1  client, Mr. Stickels, also to understand what's being read

2  because I'm going to come back and ask him some questions

3  about it later.

4          MR. STICKELS:  Yes, sir.

5          THE COURT:  And I want him to remember what was

6  being read at that time.

7      Both of them need an interpreter but the interpreter --

8          MR. STICKELS:  No, sir, he does not need an

9  interpreter, Your Honor.

10          THE COURT:  Oh, that's right, your client does not

11  need one.  Thank you for calling that it my attention.  That

12  will save some reading.

13          MR. STICKELS:  Yes, Your Honor.

14          THE COURT:  Okay.  Before we go any further with

15  Mr. Lozano, let me get some personal information about him.

16      What is your age and date of birth?

17      Mr. Lozano, what's your age and date of birth?

18          DEFENDANT LOZANO:  05/80, 29 years old.

19          THE COURT:  What kind of work -- how far did you go

20  in school?

21          DEFENDANT LOZANO:  Well, it's prep school, second

22  grade.  So it's six, nine -- 11.  11 grade.

23          THE COURT:  Where in Mexico did go to school?

24          DEFENDANT LOZANO:  Durango, Mexico.

25          THE COURT:  And what have you been doing for a

living, what kind of work?

        DEFENDANT LOZANO:  Tractor, chauffeur.

        MR. DANIELSON:  Your Honor, if I may go back a second?  I believe he went two years of college.

        THE COURT:  Where did you go to college?

        DEFENDANT LOZANO:  Durango.

        THE COURT:  Okay.  And what kind of work have you done?  What have you done for you a living?

        DEFENDANT LOZANO:  Well, it's a chauffeur, and delivering driver -- driver, delivering furniture.

        THE COURT:  Have you been a chauffeur here in the United States?

        DEFENDANT LOZANO:  Yes, sir.

        THE COURT:  Are you under the care of a physician or psychiatrist for anything?

        DEFENDANT LOZANO:  No.

        THE COURT:  Have you been at any time in the last six months?

        DEFENDANT LOZANO:  No.

        THE COURT:  Have you ever been hospitalized or treated for narcotic addiction or alcoholism?

        DEFENDANT LOZANO:  No.

        THE COURT:  As far as you're concerned, do you suffer from any kind of emotional or mental disability or problem?

```
1              DEFENDANT LOZANO:  No.

2              THE COURT:  Are you in -- under the influence of

3    alcohol or any -- any kind of drug?

4              DEFENDANT LOZANO:  No.

5              THE COURT:  Do you consider at that you're of sound

6    mind?

7              DEFENDANT LOZANO:  Yes.

8              THE COURT:  Do you understand that you're here

9    today with the intent to plead guilty to the offense charged

10   by count 1 of the indictment in this case, that is,

11   conspiracy to smuggle goods from the United States?

12       Do you understand that?

13             DEFENDANT LOZANO:  Yes.

14             THE COURT:  Do you have any reason to think,

15   Mr. Danielson, that your client is not fully competent to

16   enter such a plea?

17             MR. DANIELSON:  No, Your Honor.

18             THE COURT:  Or that such a plea would not be a

19   knowing and voluntary plea?

20             MR. DANIELSON:  It would be.

21       I believe it would be, sir.

22             THE COURT:  Okay.  You have received a copy of the

23   indictment in this case.  And it's been read to you in your

24   language.

25       Is that correct, Mr. Lozano?
```

1     DEFENDANT LOZANO:  Yes.

2     THE COURT:  Unless there's a waiver of the reading

3 of the indictment I'm going to ask that the applicable parts

4 be read aloud at this time.

5     MR. DANIELSON:  Waive them.

6     THE COURT:  You do understand that the offense

7 you're charged with in the indictment is conspiracy to

8 smuggle goods from the United States, or at least that's the

9 offense to which you propose to plead guilty?

10     DEFENDANT LOZANO:  Yes.

11     THE COURT:  Okay.  I have a document that's been --

12 two documents that's been handed up to me that appear to have

13 been signed by you.  One of them is called the factual

14 resume.  And the other is called a plea agreement.  And I'm

15 going to hold them both up so you can see what I'm talking

16 about.

17   Did you sign those documents?

18     DEFENDANT LOZANO:  Yes.

19     THE COURT:  And did -- were they read to you in

20 your language before you signed them?

21     DEFENDANT LOZANO:  Yes.

22     THE COURT:  And did you understand exactly what

23 each one of them said before you signed it?

24     DEFENDANT LOZANO:  Yes.

25     THE COURT:  And did you discuss those documents

1    with your attorney before you signed them so you would be

2    sure you understand the legal meaning of each one of them?

3                   DEFENDANT LOZANO:   Yes.

4                   THE COURT:   And did you understand what your

5    attorney told you?

6                   DEFENDANT LOZANO:   Yes.

7                   THE COURT:   And you understand the next thing I'm

8    going to go over with you then because it's in that document,

9    and this is the things the government would have to prove,

10   the essential elements of the offenses the government would

11   have to prove to a jury beyond a reasonable doubt if you were

12   to persist in your plea of not guilty to the offense charged

13   by the indictment.  And I'm going to go over those with you

14   because it's important.

15        Are the elements of the offense the same as to each

16   defendant?

17                   MR. BURGESS:   They are, Your Honor.

18                   THE COURT:   Okay.  I'm going to have Mr. Flores

19   follow along with me, Mr. Stickels, have him follow along

20   with me, what I'm getting ready to say.

21        Mr. Flores, I'm going to go over the things that the

22   government has to prove to cause you to be convicted of the

23   offense charged by count 1 of the indictment, which is the

24   offense you propose to plead guilty to as well.

25        And then after I go over them I'm going to ask you some

1    questions about them, so listen very carefully --

2              DEFENDANT FLORES:  Yes, sir.

3              THE COURT:  -- to what I'm getting ready to go over

4    now.

5         So this is directed to both of the defendants,

6    Mr. Lozano and Mr. Flores.

7         If you were to persist in your plea of guilty -- a plea

8    of not guilty to count 1 of the indictment, for you to be

9    convicted of that offense, the government would have to prove

10   to the jury what I'm getting ready to talk about now.

11        First, that the defendant and at least one other person

12   made an agreement to commit the crime of smuggling goods from

13   the United States as described in 18 United States Code

14   Section 554 and as charged in the indictment.

15        Second, that the defendant knew of the unlawful purpose

16   of the agreement and joined in it willfully, that is, with

17   the intent to further the unlawful purpose.

18        And, third, that one of the conspirators during the

19   existence of the conspiracy knowingly committed at least one

20   of the overt acts described in the indictment in order to

21   accomplish some object or purpose of the conspiracy.

22        Now, first of all, before I go to the remainder of that

23   I want to ask Mr. Lozano:  Do you understand those are the

24   things the government would have to prove to a jury beyond a

25   reasonable doubt to cause to you be convicted of the offense

1    charged by count 1 of the indictment?

2            DEFENDANT LOZANO:   Yes.

3            THE COURT:   Defendant Mr. Flores, do you understand

4    the government would have to prove those things to a jury

5    beyond a reasonable doubt to cause you to be convict of the

6    offense charged by count 1 of the indictment?

7            DEFENDANT FLORES:   Yes, Your Honor.

8            THE COURT:   Okay.   Now, one of the things I just

9    told you the government would have to prove is that you

10   smuggled goods from the United States as described in 18

11   United States Code Section 554.   So I'm going to go over with

12   you now the things the government would have to prove to the

13   jury to cause beyond a reasonable doubt or persuade the jury

14   that you -- you smuggled goods from the United States within

15   the meaning of 18 United States Code 3554 -- I mean not 3554,

16   Section 554, 18 United States Code Section 554.

17       The things, the elements, of that offense are:

18       First, that the defendant fraudulently and knowingly

19   received, concealed, brought, or facilitated the

20   transportation, concealment, and sale prior to export from

21   the United States merchandise, articles, and objects, that

22   is, firearms.

23       Second, that the articles were listed in the United

24   States munitions list at the time of the offense.

25       Third, that the defendant failed to obtain a license

1    from the U.S. Department of State before exporting or

2    attempting to export these defense article as required by 22

3    U.S. Code Section 277(a).

4        And, fourth, that the defendant acted willfully.

5        Now, do you understand, those are the things the

6    government would have to prove to a jury, Mr. Lozano, for you

7    to be found to have smuggled goods from the United States

8    within the meaning of 18 United States Code Section 554?

9        Do you understand that?

10        DEFENDANT LOZANO:   Yes.

11        THE COURT:   Mr. Flores, I've gone over the things,

12    the elements, of -- to establish a violation of 18 United

13    States Code Section 554, I just went over those.   Do you

14    understand those are the things the government would have to

15    prove to establish that you violated 18 United States Code

16    Section 554?

17        DEFENDANT FLORES:   Yes, Your Honor, I do.

18        THE COURT:   Okay.   Mr. Lozano, do you admit that

19    all of the elements I've gone over, both of the conspiracy

20    elements and the elements of 554, exist in this case?

21        DEFENDANT LOZANO:   Yes.

22        THE COURT:   Mr. Flores, do you admit that all of

23    the elements I've gone over, that is, the elements of the

24    conspiracy and the elements of Section 554, exist in this

25    case?

1          DEFENDANT FLORES:  Yes, sir.

2          THE COURT:  Okay.  Let me get back to Mr. Lozano.

3   I'll come back to Mr. Flores again in a minute.

4      Mr. Lozano, you have your attorney with you.  Are you

5   satisfied with the legal representation he's given you?

6          DEFENDANT LOZANO:  Yes.

7          THE COURT:  Do you have any complaint whatsoever

8   with him as your attorney?

9          DEFENDANT LOZANO:  No.

10         THE COURT:  And I take it, Mr. Danielson, that the

11  willingness of your client to plead guilty results from prior

12  discussions between you and your client, on the one hand, and

13  the attorney for the government on the other?

14         MR. DANIELSON:  It does, Your Honor.

15         THE COURT:  And that those discussions resulted in

16  the plea agreement I mentioned a minute ago as to your

17  client?

18         MR. DANIELSON:  That's correct.

19         THE COURT:  Okay.  I'm going to have the plea

20  agreement read aloud.  I'm told that the plea agreement that

21  will be read now is identical to the plea agreement that

22  Mr. Flores signed except for one sentence.

23      Is that correct?

24         MR. BURGESS:  That is correct, Your Honor.

25         THE COURT:  So, Mr. Flores, I want you to follow

1    along with your copy of that plea agreement so when I ask you

2    questions about it you'll know how to answer the questions.

3    You'll know what I'm talking about.

4        Okay.  Go ahead.

5            MR. BURGESS:  And, Your Honor, every time there's a

6    reference to "the defendant" and I just reference them as

7    "the defendant"?

8            THE COURT:  Just say "the defendant," even when it

9    talks about the defendant's attorney -- well, it doesn't have

10   the name.

11           MR. BURGESS:  Okay.

12           THE COURT:  But make sure you call our attention to

13   when you get to the difference in it, where there's a

14   sentence different.

15           MR. BURGESS:  Yes, Your Honor.

16           THE COURT:  Okay.

17           MR. BURGESS:  The defendant, the defendant's

18   attorney, and the United States of America, the government,

19   agree as follows:

20       Rights of the defendant.

21       The defendant understands that he has the right to plead

22   not guilty, to have a trial by jury, to have his guilt proven

23   beyond a reasonable doubt, to confront and cross-examine

24   witnesses and call witnesses in his defense, and against

25   self-incrimination.

1        Waiver of rights and plea of guilty.

2        The defendant waives these rights and pleads guilty to

3    the offense alleged in count 1 of the indictment charging

4    conspiracy to smuggle goods from the United States in

5    violation of 18 U.S.C. Section 371.

6        Lozano -- excuse me.  The defendant understands the

7    nature and elements of the crime to which he is pleading

8    guilty and agrees that the factual resume he has signed is

9    true and will be submitted as evidence.

10       Sentence.

11       On count 1 of the indictment charging conspiracy to

12   smuggle goods from the United States in violation of 18 U.S.

13   Code Section 371, the court may impose the following

14   penalties:

15       Imprisonment for a period of not more than five years.

16       A fine not to exceeds $250,000 or twice the amount of

17   criminally derived property involved in the transactions.

18       A term of supervised release of not more than three

19   years which may be mandatory under the law and will follow

20   any term of imprisonment.  If the defendant violates the

21   conditions of supervised release he could be imprisoned for

22   the entire term of supervised release.

23       A mandatory special assessment of $100.

24       Forfeiture of money and property.

25       And costs of incarceration and supervision.

1          THE COURT:  Let me stop you there a minute.

2      What I'm getting ready to say is directed to both

3  defendants in front of me now, Defendant Lozano and Defendant

4  Flores.

5          You just heard read the penalties that can be imposed on

6  a person who's convicted of the offense charged by count 1 of

7  the indictment in this case, that is, a term of imprisonment

8  of five years, plus, payment of a fine of $250,000, plus,

9  service of a term of supervised release of three year, and

10  that would be mandatory and that would start when you get out

11  of prison, plus, payments of a special assessment of $100,

12  plus, forfeiture of property as alleged in the indictment

13  which has in it forfeiture allegations, plus, cost of

14  incarceration and supervision.

15         Plus, if you were to violate any condition of that

16  supervised release I mentioned, it could be revoked and you

17  could be sent back to prison and you could be required to

18  serve another term of imprisonment that would be as long as

19  your term of supervised release.

20         Defendant Lozano, do you understand you're subjecting

21  yourself to all those penalties and punishments if you plead

22  guilty to the offense charged by count 1 of the indictment?

23         DEFENDANT LOZANO:  Yes.

24         THE COURT:  Defendant Lozano, do you understand

25  you're subjecting yourself to all those penalties and

1    punishments if you plead guilty to the offense charged by

2    count 1 of the indictment -- Defendant Flores?

3              DEFENDANT FLORES:  Yes, sir.  Yes, Your Honor.

4              THE COURT:  Let me start over again.  I got the

5    name mixed up, didn't I?

6         Defendant Flores, you understand you're subjecting

7    yourself to all those penalties and punishments if you plead

8    guilty to the offense charged by count 1 of the indictment?

9              DEFENDANT FLORES:  Yes, Your Honor, I do.

10             THE COURT:  Okay.

11        Go ahead with the reading of the plea agreement.

12             MR. BURGESS:  Thank you, Your Honor.

13        The defendant understands that the sentence in this case

14   will be imposed by the court after consideration of the

15   United States Sentencing Guidelines.  The guidelines are not

16   binding on the court but are advisory only.

17        The defendant has reviewed the guidelines with his

18   attorney and understands no one can predict with certainty

19   the outcome of the court's consideration of the guidelines in

20   this case.

21        The defendant will not be allowed to withdraw his plea

22   if the sentence is higher than expected.

23        The defendant understands that the actual sentence

24   imposed so long as it is within the statutory maximum is

25   solely in the discretion of the court.

1    The defendant agrees to cooperate with the government by

2    giving truthful and complete information and/or testimony in

3    any proceeding regarding his knowledge and any violations of

4    any law of the United States occurring in the Northern

5    District of Texas and elsewhere.

6    Upon demand, the defendant shall submit a personal

7    financial statement under oath and submit to interviews by

8    the government and the U.S. probation office regarding his

9    capacity to satisfy any fines or restitution.

10    The government will advise of the court of the extent of

11    the defendant's cooperation.

12    Government's agreement.

13    The government will not bring any additional charges

14    against the defendant based upon the conduct underlying and

15    related to the defendant's plea of guilty.

16    If the defendant has provided substantial assistance in

17    the investigation or prosecution of others the government may

18    file a motion urging sentence consideration for that

19    assistance.  Whether and to what extent to grant the motion

20    are matters solely within the court's discretion.

21    And now, Your Honor, we've reached the difference in

22    sentences.

23    In --

24         THE COURT:  What paragraph are you reading from?

25         MR. BURGESS:  In paragraph 6, Your Honor.

1          THE COURT:  Okay.  Go ahead.

2          MR. BURGESS:  In paragraph 6 of Defendant Flores'

3    plea agreement it goes on and states the government will

4    dismiss after sentencing any remaining charges in this or any

5    superseding indictment.

6          For the record, Your Honor, both of these defendants

7    were named in a superseding indictment this past Tuesday in

8    prepare-- it was the last grand jury we had before trial.

9    And so knowing we may -- that people back out of pleas we

10   went ahead and indicted against everyone.

11         It is the government's intention to ask Defendant Flores

12   to dismiss that superseding indictment.  It doesn't change

13   anything substantively against the defendant.

14         Even though it is not written in Defendant Lozano's plea

15   agreement, it is the government's intention to dismiss this

16   superseding indictment as it relates to this defendant,

17   should the court accept his plea.

18         THE COURT:  Okay.  Go ahead.

19         MR. BURGESS:  Thank you.

20         Violation of agreement.

21         The defendant understands that if he violates any

22   provision of this agreement or if his guilty plea is vacated

23   or withdrawn, the government will be free from any

24   obligations of the agreement and free to prosecute the

25   defendant for all offenses of which it has knowledge.

1    In such event the defendant waives any objection upon

2    delay in prosecution.

3    If the plea is vacated or withdrawn for any reason other

4    than a finding it was involuntary, the defendant also waives

5    objection to the use against him of any information or

6    statements he has provided to the government and any

7    resulting leads.

8    Voluntary plea.

9    The plea of guilty is freely and voluntarily made and is

10   not the result of threats or of promises apart from those set

11   forth in the plea agreement.  There have been no guarantees

12   or promises from anyone as to what sentence the court will

13   impose.

14   Forfeiture of property.

15   The defendant agrees to forfeit all right and title and

16   interest in the following property to the United States of

17   America:

18   The real property at 6209 Roberts Lane, Cleburne,

19   Johnson County, Texas, described as being 4.811 acre, more or

20   less, the tract of land out of the S. Kinsey Survey, Abstract

21   475, Johnson, County, Texas, and more particularly described

22   as the real property conveyed by Steve and J. Perry and Diana

23   L. Perry to Ramon Godinez by warranty deed with vendors lien

24   on July 20th, 2007, recorded with the Johnson County Clerk on

25   July 30, 2007.

1          2008 Dodge Ram VIN 3D6WC66A08G148431 and bearing

2     Oklahoma license plate 180-BXC.

3          2003 Ford F-50 VIN 1FDAF56P53EC75452 and bearing

4     Oklahoma license plate 073-BAZ.

5          2007 Chevrolet box truck, two of them.  The first VIN

6     being 1GBHG31U871160895.  The other is 1GBHG31V071181295.

7          Six Colt Law Enforcement Carbine 5.56 millimeter rifles

8     Model LE6920, serial numbers LE70662, LE073524, LE074412,

9     LE073210, LE068877, LE073371.

10          One Colt model 029 El Jefe .38 caliber SS -- serial

11     number 38SS04015.

12          100 rounds of Lake City .50 caliber ammunition.

13          8PTR91 model KMF4308 carbine seized from the home of

14     Gustavo Pulido on or about July 14th, 2009.

15          The defendant agrees that the above-described property

16     was merchandise attempted to be exported or sent from the

17     United States in violation of 18 U.S.C. Section 554 and

18     227(a) as alleged in count 1 was used to facilitate the

19     attempted exporting or sending of such merchandise or the

20     receipt, purchase, transportation, concealment, or sale such

21     merchandise prior to exportation, in violation of 18 U.S.C.

22     Section 554 and 227(a) as alleged in count 1.

23          The defendant agrees to the forfeiture of the

24     above-described property to the United States of America as a

25     result of his conviction for the offense pursuant to 19

U.S.C. Section 1595(a)(Z) in conjunction with 28 U.S.C. Section 2461(c).

The defendant consents to the entry of orders of forfeiture for the above-described property and waives any requirements of rule 732.2 and/or 43(a) of the federal rules of criminal procedure regarding the forfeiture proceedings including notice through a forfeiture allegation.

The defendant acknowledges and understands that the forfeiture of the above-described property is part of the sentence which may be imposed in this case and waives any requirement that the court advise him of the same pursuant to rule 11(b)(1)(j) of the federal rules of criminal procedure.

The defendant agrees to provide truthful information and evidence necessary for the government to effect the forfeiture of the above-described property.

The defendant waives all challenges, constitutional, statutory, habeas, et cetera, to the forfeiture of the above-described property and agrees to hold the government, its agents, its officer, and employees harmless from any claims whatsoever in connection with the seizure, forfeiture, storage, or disposal of the above-described property.

Further, the defendant agrees not to make a claim or assert any interest in, contest, challenge, or appeal in any way the administrative or judicial, civil or criminal, forfeiture to the United States of America of any property,

1    real or personal, alleged as subject of forfeiture in the

2    indictment or seized or restrained by law enforcement

3    agencies during the investigation related to the indictment.

4         He agrees that this property is subject to forfeiture

5    pursuant to 19 U.S.C. Section 1595(a)(D), 21 U.S.C. Section

6    881(a), 21 U.S.C. Section 853(a), and/or 18 U.S.C. 924(d),

7    whichever is applicable.

8         Representation of counsel.

9         The defendant has thoroughly reviewed all legal and

10   factual aspects of this case with his lawyer and is fully

11   satisfied with the lawyer's legal representation.  He has

12   received from his lawyer explanations satisfactory to him

13   concerning each paragraph of this plea agreement, each of his

14   rights affected by this agreement, and the alternatives

15   available to him other than entering into this agreement.

16        Because he concedes he is guilty and after conferring

17   with his lawyer the defendant has concluded it is in his best

18   interest to enter into the plea agreement and all its terms

19   rather than to proceed to trial in this case.

20        Limitations of the agreement.

21        This agreement is limited to the United States

22   Attorney's Office for the Northern District of Texas and does

23   not bind any other federal, state, or local prosecuting

24   authorities nor does it prohibit any civil or administrative

25   proceedings against Lozano or any property.

1     Entirety of the agreement.

2         This document is a complete statement of the parties'

3     agreement and it may not be modified unless the modification

4     is in writing and signed by all parties.

5         And signed on December 11th, 2009.

6             THE COURT:  Defendant Lozano, you've heard the plea

7     agreement read.  Are those all of the terms of your plea

8     agreement with the government?

9             DEFENDANT LOZANO:  Yes.

10            THE COURT:  Did you voluntarily and of your own

11    free will enter into that plea agreement?

12            DEFENDANT LOZANO:  Yes.

13            THE COURT:  Other than that plea agreement, has

14    anyone made any promise or assurance to you of any kind in an

15    effort to induce you to enter a plea of guilty in this case?

16            DEFENDANT LOZANO:  No.

17            THE COURT:  Has anyone mentally, physically, or in

18    any other way attempted in any way to force you to plead

19    guilty in this case?

20            DEFENDANT LOZANO:  No.

21            THE COURT:  Other than that plea agreement, do you

22    have any deal or understanding or agreement of any kind with

23    the government?

24            DEFENDANT LOZANO:  No.

25            THE COURT:  You understand that if you plead guilty

and if that plea is accepted by the court, you be adjudged
guilty of the offense charged by count 1 of the indictment in
this case and your punishment will be assessed somewhere
within the range of punishment provided by statute and your
sentence will be within the range provided by statute?

Do you understand is that?

DEFENDANT LOZANO:  Yes.

THE COURT:  Do you understand that if you plead
guilty and then you receive a sentence that's more than you
hoped it would be you'll still be bound by your plea of
guilty and won't have a right to withdraw it?

DEFENDANT LOZANO:  Yes.

THE COURT:  With the knowledge you now have, how do
you plead to the offense charged by the indictment, guilty or
not guilty?

DEFENDANT LOZANO:  Guilty.

THE COURT:  Is that consistent with your advice to
the defendant, Mr. Danielson?

MR. DANIELSON:  It is, sir.

THE COURT:  Okay.  And I'll accept that plea on the
condition that there's a factual basis to support it.

And I'll ask at this time that the stipulated facts be
read aloud.

MR. BURGESS:  From on or about June the 14th, 2006,
until at least October the 21st, 2009, in the Fort Worth

1    Division of the Northern District of Texas and elsewhere, the

2    defendant along with Javier Rosales and Eduardo Flores, did

3    knowingly and willfully combine, conspire, confederate, and

4    agree together and with each other and with others known and

5    unknown to commit offenses against the United States

6    including violations of 18 U.S.C. Section 554(a), that is, to

7    fraudulently and knowingly export and send from the United

8    States and attempt to export and send from the United States

9    any merchandise, object, and article contrary to law and

10   regulation of the United States, that is, firearms and

11   ammunition and to receive, conceal, buy, sell, and in any

12   other manner facilitate the transportation, concealment, and

13   sale of said firearm and ammunition prior to exportation,

14   knowing the same to be intended for exportation contrary to

15   any law or regulation of the United States; specifically, 22

16   U.S.C. Section 227(a).

17        On or about October the 16th, 2009, the defendant and

18   the word "received" should be stricken there Your Honor.  I

19   don't know if you want us to pen and ink that or?

20             THE COURT:  Well, here, I'm handing it back and you

21   can correct it.

22             MR. BURGESS:  Thank you.

23             THE COURT:  Okay.  You have made a change on page 3

24   of the plea agreement -- I mean, of the stipulated facts.

25        In paragraph 2 you've marked through the word

1    "received."  And it looks like the defendant initialed that

2    to approve your having marked through that?

3              MR. DANIELSON:  Mr. Lozano, did not initial it.  I

4    did.

5              THE COURT:  Okay.  Have him -- be sure he

6    understands what is done, what you're doing, and approves it

7    by his initials.

8              MR. DANIELSON:  Yes, Your Honor.

9                   (Defendant and counsel confer.)

10             MR. DANIELSON:  He has also initialed it, Your

11   Honor.

12             THE COURT:  Mr. Lozano, a word has been marked out

13   on page 3 of the factual resume under the heading "stipulated

14   facts."  It's -- it's the first line in paragraph 2 the word

15   "received" is marked out.  Did you initial where that was

16   marked out?

17             DEFENDANT LOZANO:  Yes.

18             THE COURT:  And was that done with your approval,

19   that word being taken out?

20             DEFENDANT LOZANO:  Yes.

21             THE COURT:  Okay.  Go ahead and start reading with

22   paragraph 2 again.

23             MR. BURGESS:  On or about October 16th, 2009, the

24   defendant Isidro Lozano received six Colt, Law Enforcement

25   Carbine 5.56 rifles, model LE6920, a Colt .38 Super Pistol,

1    200 pistol magazines, and 25 AR-15 magazines from Javier

2    Rosales for the purpose of storing the weapons prior to

3    driving them to McAllen, Texas.

4        The defendant had been introduced to the conspiracy by

5    Eduardo Flores.

6        The defendant admits that these weapons were listed as

7    prohibited weapons in the United States munitions list.

8        The defendant knew that the weapons in his possession

9    were intended to be illegally and wrongfully exported to

10    Mexico.

11            THE COURT:  Okay.

12        Defendant Lozano, you've heard the stipulated facts

13    read.  Are all those facts true?

14            DEFENDANT LOZANO:  Yes.

15            THE COURT:  Are they consistent with your

16    understanding of the true fact?

17            MR. DANIELSON:  They are, Your Honor.

18            THE COURT:  Okay.  I'll order the stipulated facts,

19    factual resume filed.

20        Now, Defendant Lozano, there are some forfeiture

21    allegations in the indictment starting on page 17 of the

22    indictment.  Going through, it's 17, 18 and 19 of the

23    indictment.

24        I take it those -- those have been read to you in your

25    language?

1        DEFENDANT LOZANO:   Yes.

2        THE COURT:   You understand exactly what those

3    forfeiture allegations say?

4        DEFENDANT LOZANO:   Yes.

5        THE COURT:   How do you plead to the forfeiture

6    allegations, true or not true?

7        DEFENDANT LOZANO:   True.

8        THE COURT:   Okay.  I'm going to, if I haven't

9    already said so, I'm going to order the factual resume filed

10   along with the plea agreement.

11       The court finds in the case of United States of America

12   versus Isidro Lozano, that the defendant is fully competent

13   and capable of entering an informed plea and that his plea of

14   guilty to the offense charged by count 1 of the indictment

15   and his plea of true to the forfeiture allegations are

16   knowing and voluntary pleas supported by an independent basis

17   in fact containing each of the essential element of the

18   offense charged by count 1 of the indictment and the elements

19   required for a forfeiture and that such plea did not result

20   from force, threats, or promises other than those set forth

21   in the plea agreement.

22       Such pleas of guilty and forfeiture are therefore

23   accepted and the Defendant Lozano is no adjudged guilty of

24   the offense charged by Count 1 of the indictment and the

25   property described in the forfeiture allegation is now

1    subject to forfeiture as to Defendant Lozano.

2         Okay.   The Defendant Lozano is remanded to custody.

3         And the attorneys are excused.

4         Just a minute.

5              MR. BURGESS:  Your Honor, Mr. Lozano, is currently

6    on conditions of release.

7              THE COURT:  Oh, okay.

8              MR. BURGESS:  The United States would stipulate

9    that the conditions exist for that to continue.

10             MR. STICKELS:  He has been employed and has been

11   cooperative in every particular as far --

12             THE COURT:  Okay.

13        What -- what does the government's stipulate to?

14             MR. BURGESS:  That he is not a flight risk nor

15   danger to society, Your Honor, and that he can remain on the

16   conditions of release.

17             THE COURT:  Are you stipulating that that's been

18   established by clear and convincing evidence?

19             MR. BURGESS:  We do, Your Honor.

20             THE COURT:  Mr. Lozano, I'm going to let you remain

21   free up until the date of sentencing, but you'll still be

22   subject to those conditions that were fixed by Magistrate

23   Judge Ramirez in the order she signed on October 27, 2009.

24        Do you remember all those conditions that you're subject

25   to?

```
1              DEFENDANT LOZANO:  Yes.

2              THE COURT:  I'm going to add one condition to that,

3    and referring to the form that Judge Ramirez used it will be

4    condition 7(p).

5              And that is that you shall refrain from use or unlawful

6    possession of a narcotic drug or other controlled substances

7    defined in 21 United States Code Section 802 unless

8    prescribed -- prescribed by a licensed medical practitioner.

9              Do you understand I'm adding that condition?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Okay.  Well, I'm going to let you

12   remain free subject to all the conditions that we've just

13   discussed.

14             Defendant and the attorneys are excused.

15                        (End of proceeding.)

16

17

18

19

20

21

22

23

24

25
```

1          C E R T I F I C A T I O N

2

3     I, RANDY M. WILSON, C.S.R., certify that at the time of

4  electronic filing the foregoing is a true and correct, to the

5  best of my abilities, of the pages of the stenographic notes

6  provided to me by the court of the proceedings taken at the

7  date and time previously stated in the foregoing entitled

8  matter.

9

10    I further certify that I am neither counsel for, related

11 to, nor employed by any of the parties to the action in which

12 this hearing was taken and further I am not financially or

13 otherwise interested in the outcome of the action.

14

15    I certify that the transcript fees format comply with

16 those prescribed by the Court and the Judicial Conference of

17 the United States.

18

19     This the 29nd day of November, 2010.

20

21

22              s/RANDY M. WILSON
                _____
23
                RANDY M. WILSON, C.S.R.
24              Official Court Reporter
                The Northern District of Texas
25                   Dallas Division


RANDY M.   WILSON, CSR
U.S. DISTRICT COURT - 214.766.9150